THE HARTFORD ELECTRIC LIGHT COMPANY *v.* CHARLES
J. MCLAUGHLIN, TAX COMMISSIONER.

MALTBIE, C. J., BROWN, JENNINGS, ELLS AND DICKENSON, Js.

Argued February 3—decided April 13, 1944.

(1)

*Charles L. Smiddy,* with whom, on the brief, was *Austin D. Barney,* for the plaintiff.

*Thomas J. Conroy,* assistant attorney general, with whom, on the brief, was *Francis A. Pallotti,* attorney general, for the defendant.

BROWN, J. On this appeal from the defendant's ruling adding $490,631.21 to the amount of the plaintiff's taxable gross earnings set forth in its return for the year 1941, the Superior Court has reserved to this court the question whether the defendant erred in holding that under General Statutes, § 1322, as amended by § 180f of the Supplement of 1941, the three items comprising the above total constitute gross earnings from operations of the plaintiff which as such are taxable.

These material facts are undisputed: The plaintiff is a specially chartered corporation under the laws of this state located in Hartford, engaged in manufacturing, selling and distributing electricity within the provisions of the above statute. Its return made to the defendant for the year 1941 showed "total gross earnings from all operations, less interest and dividends received and uncollectible accounts charged off—$10,-296,897.05." The defendant by his determination made pursuant to the statute added to this sum a total of

$490,631.21. The first item of this total was $177,-870.81, received by the plaintiff from the Colt's Patent Fire Arms Manufacturing Company, as provided by written agreement, for money expended by the plaintiff in the construction of facilities to be used in supplying that company with electric power. This item included only the amount of money actually spent for the labor and materials required for this job. Title to the facilities on the Colt's Company's property which cost $49,645.48 was in that company, while the legal title to those located in the highway costing $128,225.33 was retained in the plaintiff, but the contract provided that upon abandonment of the service title to the latter should revert to Colt's. The second item was $55,-246.75, received by the plaintiff from Colt's for money expended for work and materials in connection with another job pursuant to an oral agreement by which the plaintiff installed certain equipment for Colt's which became the property of the latter. The third item was $257,513.65, received by the plaintiff from the Connecticut Power Company for money actually paid by the plaintiff for material purchased for that company. In effecting these purchases the plaintiff acted as agent for the Power Company. All of the goods so purchased were delivered direct to the Power Company and title thereto was at no time in the plaintiff. The unpaid amount of the tax on these items as assessed by the defendant is $7,359.47. The question for decision is whether these items or any of them constitute "gross earnings from operations" and so are subject to the tax provided in the statute.

Section 1322 as amended provides: "Each company, the principal business of which is manufacturing, selling and distributing . . . electricity to be used for light, heat or motive power . . . shall pay an annual tax upon gross earnings from operations in this state.

No deduction shall be allowed from such gross earnings for any commission, rebate or other payment, except a refund resulting from an error or overcharge, and those specifically mentioned in section 1323. Each such company shall . . . return . . . a statement . . . specifying . . . the amount of gross earnings from operations for the year. . . ." Section 181f amending § 1323 provides: "Each company . . . shall be taxed at the rate of one and one-half per cent upon the amount of gross earnings from operations, but deductions shall be made of gross earnings from the sale of any water, gas or electricity, to other public service corporations for resale. Deductions shall also be made from gross earnings from sales of appliances using water, gas or electricity by each such company of the net invoice price plus transportation costs of such appliances." Section 1322 as amended, in addition to requiring the return already recited, provides that it shall also include gross earnings from the two sources just mentioned. These two deductions are the only ones specified in § 181f.

The plaintiff expressly disavows any claim that the items in question are either within the deductions specifically mentioned in the statute or deductible because only incidental to the business. It does claim as to the first two items that the so-called "reimbursements" were for capital expenditures. The short answer to this claim is that the operations did not add to the capital investment of the plaintiff but to that of the Colt's Company. The plaintiff's contention as to all three items is that they are not "gross earnings from operations" within its terms. The answer to this question involves a determination of the meaning of "gross earnings" and also of "operations" as here used. Apparently it is not questioned that "gross" means whole, entire, total. The plaintiff does argue, however, that

dictionary definitions as well as accepted accounting terminology show that, while the word "receipts" may properly be construed as including income, reimbursements and earnings, the meaning of "earnings" is much less inclusive and is restricted to gain created by labor, business or property. A considerably broader meaning is suggested, however, by the definition of earn, which is "to acquire by labor, service, or performance." Webster's New International Dictionary (2d Ed.). This aside, as indicated by this court in a decision construing this very statute, the reason and purpose of the legislation as shown by its provisions may well be more significant than technical definitions in determining the meaning of the particular words employed. This is especially true where, as here, the statute prescribes a tax on gross earnings of utility corporations engaged in a noncompetitive business, instead of a franchise tax measured by net income such as is imposed upon the ordinary business concern.

In the case referred to, *State* v. *United Electric Light & Water Co.*, 90 Conn. 452, 97 Atl. 857, where the defendant claimed that money received by it as reimbursement for money expended to purchase electricity from another corporation was no part of "gross earnings" within the statute, it is pointed out in the opinion (p. 459) that the purpose of the enactment is to raise revenue for the state by taxing such companies upon their franchises or business whether or not they make a profit; that they are properly subject to a state tax upon the franchises and privileges granted them by special charter permitting the maintenance of their transmission lines in the public highways; that the language of the act shows no intent to measure the taxes in question by a percentage of profits or net income from operations; and that the specific provision that no deductions shall be made from gross earnings

except those above referred to "not only does not show an intent that the tax shall be based upon the net earnings of the companies taxed, but shows a clear intent to base it upon their entire income from all their operations." In short, as the court further stated: "When we speak of the 'gross earnings' of a person or corporation we mean the entire earnings or receipts of such person or corporation from the business or operations to which we refer." That the legislature employed the words "gross earnings" in the sense of entire receipts from the business or operations of such a corporation is confirmed by its enactment of § 181f as above quoted, rendering taxable only that part of "gross earnings from sales of appliances" remaining after deduction "of the net invoice price plus transportation cost of such appliances."

The stipulation of the parties shows that, as required by the regulations of the Connecticut public utilities commission in evidence, these items were carried by the plaintiff on its books under the various designations prescribed, none of which refers to "gross earnings." The plaintiff urges that this is persuasive evidence in support of its contention. Whatever its evidential value, manifestly the adoption of these accounting practices by the commission to facilitate its regulation of public utility companies can have no controlling effect upon a public statute enacted by the legislature as a revenue measure. See *Spector Motor Service, Inc.* v. *Walsh*, 139 Fed. (2d) 809, 816. Nor do the decisions in federal income and other tax cases cited by the plaintiff furnish cogent authority in support of its claim, by reason of the differing contexts of the statutes involved. The grounds advanced by this court above stated afford sound and sufficient reason for our conclusion that the items in question do fall within the term "gross earnings."

It remains to determine whether the statute is nevertheless inapplicable as to them by reason of the limitation rendering it inoperative unless such earnings arise "from operations" of the plaintiff company. This court further held in *State* v. *United Electric Light & Water Co.*, supra, 458, "that by gross earnings from operations in this State was intended all operations in this State, including incidental, subordinate and subsidiary operations as well as principal operations." A much narrower rule would suffice to encompass the transactions in the present case, each of which not only involved receipt by the plaintiff of the amount in question as incident to the transfer of the title of tangible property to a third party but was also fairly and reasonably open to the construction that it was within as well as directly and primarily for the advancement of the plaintiff's principal corporate purposes. It is self-evident that the installation of the equipment to facilitate the sale of electric energy by the plaintiff to Colt's which is the basis of the first two items is an operation of the plaintiff within the principle quoted as thus qualified. It was a mode of operation chosen by the plaintiff as a means adapted to the ends of the corporation, being an exercise of powers within the fair intent and purpose of its creation and reasonably proper to give effect to such powers, and thus constituted a corporate operation within the statute. That the plaintiff elected by its contract to forego a direct profit on the installation is immaterial. So far as appears it could have exacted such a profit had it seen fit, and a contemplated indirect benefit from increased sale of electricity was implicit in the arrangement. What we have said of the first two items holds true of the third as well, except that the indirect benefit is not so clearly an incident upon the facts stipulated. Notwithstanding this, it is an undisputed fact that the plaintiff

is a business and not a charitable corporation. It is also undisputed that as a result of engaging in this activity it received $257,513.65, none of which falls within any of the allowable deductions specified in the statute. Under the circumstances, that the facts fail to show the reason why the defendant decided to waive any direct profit in connection with this item cannot serve to transmute the transactions involved into other than corporate operations and thus take the item out of the statute. It is our conclusion that all three items constitute "gross earnings from operations" which are subject to the tax provided in the statute.

We therefore say in answer to the questions propounded in the reservation that the tax commissioner did not err in ruling that § 1322 of the General Statutes as amended by § 180f of the 1941 Supplement requires that all three items be considered as gross earnings of the plaintiff and that they be taxed as such.

Costs will be taxed in favor of the defendant as though he were the prevailing party defendant upon an appeal.

In this opinion the other judges concurred.