BRIDGEPORT HYDRAULIC COMPANY *v.* JOHN L. SULLIVAN, TAX COMMISSIONER

KING, C. J., MURPHY, ALCORN, COMLEY and SHANNON, Js.

Argued May 6—decided June 15, 1965

*Raymond W. Beckwith,* for the appellant (plaintiff).

*Ralph G. Murphy,* assistant attorney general, with whom were *Walter T. Faulkner,* assistant attorney general, and, on the brief, *Harold M. Mulvey,* attorney general, for the appellee (defendant).

COMLEY, J. The plaintiff is a specially chartered public utility engaged in supplying water to the city of Bridgeport and nearby towns. It owns land on which are reservoirs, distribution systems and watershed areas. It has planted part of its watershed area with orchard and nursery stock. It has sold fruit and other produce from the orchards to the general public at wholesale and retail and has also sold nursery stock and Christmas trees which it had not needed in its own program of conservation and reforestation. General Statutes § 12-264 imposes a tax on the gross earnings of certain public utility companies, including water companies.[1] For the calendar year ending December 31, 1962, the plaintiff filed a return of its gross earnings from all sources except its orchard and nursery

[1] "Sec. 12-264. TAX ON GROSS EARNINGS. RETURN. . . . [E]ach company, the principal business of which is . . . operating a system of water works for selling and distributing water for domestic or power purposes, shall pay an annual tax upon gross earnings from such operations in this state. Gross earnings from such operations shall include all income classified as operating revenues by the public utilities commission in the uniform systems of accounts prescribed by said commission and, with respect to each such company, all income classified in said uniform systems of accounts as income from merchandising, jobbing and contract work, income from nonutility operations and revenues from lease of physical property not devoted to utility operation, and receipts from the sale of residuals and other by-products obtained in connection with the production of gas, electricity or steam. No deductions shall be allowed from such gross earnings for any commission, rebate or other payment, except a refund resulting from an error or overcharge, and those specifically mentioned in section 12-265. Each such company . . . shall, on or before the first day of April, annually, render to the tax commissioner under oath of its treasurer, . . . a return on forms prescribed or furnished by the commissioner specifying: . . . the amount of gross earnings from operations . . . , the gross earnings from the sale or rental of appliances using water, steam, gas or electricity and the cost of such appliances sold, cost to be interpreted as net invoice price plus transportation costs of such appliances . . . ."

operations. As to these operations, it reported only net earnings of $5953.83, whereas its gross earnings were in fact $149,732.58. The defendant thereupon sent to the plaintiff a notice of the additional tax computed on the gross earnings from the orchard and nursery operations excluding the gross expenses claimed by the plaintiff. The plaintiff paid the additional tax under protest to avoid the running of interest and appealed from the assessment to the Superior Court. From the judgment dismissing the appeal, the plaintiff has appealed to this court.

A gross earnings tax was originally imposed on water companies in 1915. Public Acts 1915, c. 292, § 11 (Rev. 1918, § 1370). The statute appeared in substantially its original form in the 1930 Revision of the General Statutes. Rev. 1930, § 1322. The statute at that time imposed "an annual tax upon gross earnings from operations in this state." We held that the term "gross earnings" as used in the statute meant the entire earnings or receipts. This holding was based on the common meaning of the words read in the light of the prohibition against deductions in the statute. *State* v. *United Electric Light & Water Co.,* 90 Conn. 452, 460, 97 A. 857; *Hartford Electric Light Co.* v. *McLaughlin,* 131 Conn. 1, 6, 37 A.2d 361. In *McLaughlin,* we also construed (p. 7) that statute to include within gross earnings earnings from incidental, subordinate and subsidiary operations.

The statute as it presently exists was not enacted until 1945. Sup. 1945, § 298h. This section added to the statute the following provision: "Gross earnings from operations shall include all income classified as operating revenues by the public utilities commission in the uniform systems of accounts prescribed by said commission . . . ." This is the

language on which the plaintiff rests its case. The plaintiff looks to the uniform system of accounts and contends that operating revenues as defined in income account 501 include the revenues included in revenue accounts 601-16.[2] The revenues from the sale of orchard produce and nursery stock is governed by revenue account 615,[3] which states in part B: "This account shall be charged with the cost of harvesting, cutting and marketing ice, fruit, crops and similar products." Thus, the plaintiff argues that its account of the revenues from these operations is brought forth into income account 501 of the uniform system of accounts only as a net figure.

This argument is refuted by the language of General Statutes § 12-264. That statute imposes a tax on gross earnings and provides that gross earnings shall include "income from nonutility operations." The only reasonable construction of this language is that it means gross income. The statute itself lists the items which may be deducted in determining gross earnings. None of them is applicable to the situation in the present case. The statute

---

[2] "501. OPERATING REVENUES. Under this caption shall be included the total operating revenues shown in the primary revenue accounts 601 to 616, derived by the utility from its utility operations during the period covered by the income account."

[3] "615. MISCELLANEOUS OPERATING REVENUES. A. This account shall include revenues incidental to water operations not includible in any of the foregoing accounts. This covers such items as fees and charges for changing, connecting, disconnecting and restoring service; profit on the sale of materials and supplies not ordinarily purchased for resale; commissions on sales or distribution of others' water (sold under rates filed by such others); management or supervision fees; sales of steam (except where the utility furnishes steam heating service); sales of ice, trees, fruits, crops, etc.

"B. This account shall be charged with the cost of harvesting, cutting and marketing ice, fruit, crops and similar products. (See also note D of account 311, Land and Land Rights.)"

may not be modified or altered by a regulation of the public utilities commission. Thus, the plaintiff was not entitled to deduct the expenses of its orchard and nursery operations for the purposes of this tax.

There is no error.

In this opinion the other judges concurred.