HARTFORD ELECTRIC LIGHT COMPANY *v.* JOHN L. SULLIVAN, TAX COMMISSIONER [F. GEORGE BROWN, TAX COMMISSIONER, SUBSTITUTED DEFENDANT]

ALCORN, C. J., HOUSE, THIM, RYAN and SHAPIRO, Js.

Argued March 3—decided April 27, 1971

*William G. DeLana,* with whom, on the brief, were *C. Duane Blinn, J. Danford Anthony, Jr.,* and *Walter H. Mayo,* for the plaintiff.

*Ralph G. Murphy,* assistant attorney general, with whom, on the brief, was *Robert K. Killian,* attorney general, for the defendant.

THIM, J. This case is before us on a reservation from the Superior Court in Hartford County, to which it came on appeal pursuant to General Statutes, chapter 212a. The appeal concerns the assessment, by the defendant, of additional taxes plus interest as against the plaintiff, and also the defendant's refusal to allow certain refunds or offset credits. For the reservation to this court the parties have provided a stipulation of facts, and have proffered seven questions to which they request answers.[1]

The plaintiff is, and long has been, a public utility. As such, it is subject to a tax on its gross earnings as prescribed by §§ 12-264 and 12-265 of chapter 212 of the General Statutes. The plaintiff is subject to accounting regulation by the public utilities commission. Accounting regulations are prescribed in the uniform system of accounts, referred to herein as the uniform system. In 1962, uniform systems

---

[1] "(1) Does Chapter 212 of the General Statutes of Connecticut, Revision of 1958, as amended, impose a tax on all receipts of the plaintiff?

"(2) If the answer to question (1) is 'No', what receipts of the plaintiff are subject to the tax imposed by Chapter 212?

"(3) If the answer to question (2) is that the plaintiff is subject to tax on 'gross earnings from operations', what receipts are to be classified as 'gross earnings from operations'?

"(4) If the answer to question (3) is that 'gross earnings from operations' means (a) all income classified as operating revenues by the public utilities commission in the uniform system of accounts prescribed by the commission for electric and gas utilities, (b) all income classified in said uniform system of accounts as income from merchandising, jobbing and contract work, (c) all income classified in said uniform system of accounts as income from non-utility operations and revenues from lease of other physical property not devoted to utility operation and, although not included in an income or operating revenue account in such system of accounts, (d) all receipts from the sale of residuals and other by-products obtained in connection with the production of gas or electricity, are any other receipts of the plaintiff subject to the tax imposed by Chapter 212?

were in effect for both electric and gas utilities, and each was dated January 1, 1941. In 1963 and 1964 the uniform systems in effect for both electric and gas utilities were those of January 1, 1963. There are separate uniform systems for electric utilities and gas utilities. The portions of both uniform systems which are pertinent to our consideration are basically identical. Citations to the uniform systems will be by section number and will refer to the electric regulations, since the specific issues here involved relate to electric company accounts.

In the years 1962, 1963 and 1964, the plaintiff duly reported its gross earnings taxes and paid them in full. On March 28, 1966, after an audit by the defendant, the plaintiff was notified of the assessment of additional gross earnings taxes for the years 1962, 1963 and 1964. The plaintiff filed a timely request for a hearing on the assessment pursuant to General Statutes § 12-268i, which was

"(5) If the answer to question (4) is 'Yes', what receipts of the plaintiff are 'gross earnings from operations' which are subject to tax under Chapter 212, which are not included in the income and operating revenue accounts of the Commission's uniform system of accounts referred to in paragraph (4), other than receipts from the sale of residuals and other by-products obtained in connection with the production of gas or electricity.

"(6) If the answer to question (4) is 'No', do amendments which have been made by the Commission to the uniform system of accounts since October 1, 1945, the effective date of the substantially similar predecessor of Section 12-264 of the General Statutes of Connecticut, Revision of 1958, as amended, have the effect of changing the base upon which the Chapter 212 tax is imposed, or, does the Commission's uniform system of accounts in effect on October 1, 1945, constitute the basis for the imposition of the Chapter 212 tax even though such system of accounts may have been amended from time to time by the Commission since October 1, 1945?

"(7) Is the plaintiff entitled to a refund of taxes paid on account of the inclusion in 'gross earnings from operations' of its (a) transmission receipts in 1964 and (b) the reimbursements for damage to electric and gas properties in 1962, 1963 and 1964?"

granted. On April 3, 1967, after a hearing on May 12, 1966, the plaintiff received a second notice of assessment for the years 1962, 1963 and 1964 in lesser amounts than the original assessment, and which superseded the original assessment. Pursuant to § 12-268l the plaintiff next filed an appeal with the Superior Court in Hartford County, appealing from the April 3 assessment. The defendant filed an answer to the plaintiff's petition. The case thereafter came to this court on a reservation, with the questions as already noted.

The basic issue with which we are faced concerns General Statutes § 12-264, and the term therein "gross earnings." We must determine whether contributions in aid of construction, transmission receipts and transmission credits are included within that term.[2] Thus, in order to answer the questions proffered, we must determine the meaning of "gross earnings" as employed in § 12-264.

I

Section 12-264, whose predecessor was amended in 1945 (Cum. Sup. 1945, § 298h), states: "Gross earnings . . . shall include all income classified as operating revenues by the public utilities commission in the uniform systems of accounts prescribed by said commission . . . , all income classified in said uniform systems of accounts as income from merchandising, jobbing and contract work, income from nonutility operations and revenues from lease of physical property not devoted to utility operation,

---

[2] A fourth category, reimbursement for damage to electric and gas properties, was originally included. In his brief, however, the defendant has conceded that such reimbursements are not subject to taxation. A fifth item, rental income from electric and gas properties and other electric and gas revenues, has not been briefed, and will, therefore, not be considered.

and receipts from the sale of residuals and other by-products obtained in connection with the production of gas, electricity or steam." The initial question with which we are faced is the interpretation of the term "shall include." The plaintiff argues that the term is one of limitation, that the items which follow it are the only items which may be included in taxable gross earnings. The defendant argues, to the contrary, that "gross earnings" merely *includes* the items stated and that other items may be prescribed by the commission.

The last time this court considered § 12-264 was in *Bridgeport Hydraulic Co.* v. *Sullivan*, 152 Conn. 671, 211 A.2d 697, which dealt with revenues from nonutility sources. In the Superior Court memorandum, the court considered the meaning of the term "shall include." It first noted the dictionary definition of "include," found it to be a term of enlargement, and not to be ambiguous. A-444 Rec. & Briefs, pp. 64, back of 65. We have also turned to the dictionary. We have found, however, that "include" is primarily defined as a term of limitation. See Webster, Third New International Dictionary; Random House Dictionary. The legal dictionaries also consider the term to be one of limitation, while indicating that "including" can be a term of enlargement. See Black, Law Dictionary (4th Ed.); Bouvier, Law Dictionary (1934 Rev.); Ballentine, Law Dictionary (3d Ed.). The definition employed in the Superior Court memorandum appears to be the secondary definition in Webster's dictionary. It thus appears that, although the most likely common use of the term "shall include" would be one of limitation, we cannot say, with certainty, that it must be so employed. We thus find the term "shall include" as used in § 12-264, to be ambiguous.

Where the meaning of a statute is ambiguous, the history and policy underlying it may be considered. *State* v. *Moreno,* 156 Conn. 233, 239, 240 A.2d 871; *Rivera* v. *I. S. Spencer's Sons, Inc.,* 154 Conn. 162, 164–65, 223 A.2d 808; *Lee* v. *Lee,* 145 Conn. 355, 358, 143 A.2d 154. In 1944 we held, in *Hartford Electric Light Co.* v. *McLaughlin,* 131 Conn. 1, 6, 37 A.2d 361, that the statute, as it then read, included *all* earnings of a utility.[3] It is significant that the statute was amended in the next legislative session. Clearly, without an amendment, the statute included *all* income. The only reason for the legislature to act on that statute would be to clarify it, and since this court had already clarified the fact that the old statute contemplated *all* income, it is only logical to infer that the legislature intended to restrict that definition. Were that not the intent, the legislation

---

[3] "[Rev. 1930] Sec. 1322. TAX ON GROSS EARNINGS. Each company, the principal business of which is manufacturing, selling and distributing gas or electricity to be used for light, heat or motive power or operating a system of water works for selling and distributing water for domestic or power purposes, shall pay an annual tax upon gross earnings from operations in this state. No deduction shall be allowed from such gross earnings for any commission, rebate or other payment, except a refund resulting from an error or overcharge, and those specifically mentioned in section 1323. Each such company shall, on or before the thirty-first day of March in each year, return to the tax commissioner a statement under the oath of its treasurer, or the person performing the duties of treasurer, or of an authorized agent or officer, specifying the name and location of such company, the amount of gross earnings from operations for the year ended the thirty-first day of December next preceding, or the portion of such year that such company has carried on business in the state, the gross earnings from the sale or rental of appliances, using water, gas or electricity and the gross earnings from the sale of any water, gas or electricity to other public service corporations in the state, the number of miles of water pipes, gas mains or electric wires operated by such company within this state on said thirty-first day of December and the number of miles of water pipes, gas mains or electric wires wherever operated by such company on said date."

would have accomplished no purpose, and we may not presume that the legislature has enacted futile or meaningless legislation. *In re Application of Plantamura,* 149 Conn. 111, 114, 176 A.2d 61, cert. denied, 369 U.S. 872, 82 S. Ct. 1141, 8 L. Ed. 2d 275; *Brown* v. *Cato,* 147 Conn. 418, 421, 162 A.2d 175. We note further that the stated purpose of 1945 Public Act 279, was to "clarify the meaning of the words 'gross earnings from operations.'" If the only effect of that act had been to specify what might be *part* of "gross earnings from operations," then the amendment would not have clarified the statute as interpreted by *Hartford Electric Light Co.* v. *McLaughlin,* supra, but rather, it would have confused the items to be included within the term "gross earnings from operations."

The bill originally introduced to amend what is now § 12-264 was phrased: "Gross earnings from operations are defined as . . . ." H.B. 683, 1945 Sess. The definition included all receipts classified in the uniform system as operating revenues, and all receipts from the sale or rental of specific types of appliances. Sometime thereafter, however, a substitute bill replaced House Bill 683, and that bill was eventually passed. Sup. 1945, § 298h. The substitute bill changed "are defined" to "shall include" and added all income classified as income from merchandising, jobbing and contract work, income from nonutility operations and revenues from lease of other physical property not devoted to utility operation, and receipts from the sale of residuals and other by-products obtained in connection with the production of gas or electricity. It is argued that the change from "define" to "include" demonstrates that the legislature did not intend to define and thus limit, but rather, intended to exemplify.

Had the only change been that term, the argument might be convincing. As demonstrated, however, the change was far more comprehensive. Several items were included in the revised bill which had not been included in the original bill, thus extending the income stated to be taxable thereunder. Recalling that the term "include" is more generally used as a term of limitation, we have concluded that the use of "include" instead of "define" was precipitated by the addition of the several items noted, which created a comprehensive list rather than a compact definition.

One last portion of legislative history convinces us that the result which we have reached is correct. In 1961, § 12-264 was repealed, and then reenacted as § 14 of 1961 Public Act 604. In the new statute, municipal utilities were added, but the portion of the statute which included operating revenues as gross earnings was left basically unchanged. Immediately thereafter, however, and preceding the rest of the categories of included revenue, the phrase "and, with respect to each such company" was added, replacing "for such companies." Were we to adopt the defendant's interpretation of the statute, then the 1961 phrasing would be for naught, since the items stated in the statute would not be inclusive. Thus, municipal utilities could be taxed on the same income as could other utility companies. The only other approach to sustain the defendant's interpretation, in keeping with what seems to be an obvious intent to restrict the tax liability of municipal utilities, would be to find that the single use of "shall include" in the statute was intended to be a term of limitation as regards municipal utilities and a term of enlargement as regards all other utility companies. The patent absurdity of such a result

confirms our conclusion that "shall include," as employed in § 12-264, is a term of limitation.

The next issue concerns the phrase, also in § 12-264, "classified as operating revenues by the public utilities commission in the uniform systems of accounts." It is contended that this phrase adopts the uniform system of accounts, and that any items which appear in any revision of that system as "operating revenues" are taxable. In interpreting statutes which adopt other statutes, the rule of construction which is applied assumes that the statute which is adopted is taken as it existed at the time of adoption, unless there is language expressing or implying an intent to the contrary. *Simmons* v. *State*, 160 Conn. 492, 498, 280 A.2d 351; *Weigel* v. *Planning & Zoning Commission*, 160 Conn. 239, 248, 278 A.2d 766; *Legat* v. *Adorno*, 138 Conn. 134, 150–52, 83 A.2d 185. It is only in instances in which the adopting statute purports to include, by reference, the law generally applicable to a given subject that subsequent modifications of the adopted statute are considered to have been intended to be included in the adopting statute. See note, 168 A.L.R. 627, 628 § II. Moreover, where, as here, a taxing statute is involved, ambiguities are resolved in favor of the taxpayer. *Consolidated Diesel Electric Corporation* v. *Stamford*, 156 Conn. 33, 36, 238 A.2d 410; *Stone* v. *Sullivan*, 154 Conn. 498, 503, 227 A.2d 76. Administrative rules and regulations are given the force and effect of law. *Citerella* v. *United Illuminating Co.*, 158 Conn. 600, 608, 266 A.2d 382; *Bailey* v. *Bruneau's Truck Service, Inc.*, 149 Conn. 46, 54, 175 A.2d 372. Certainly, when a statute adopts administrative regulations which are legislative in nature, the adoption rule would apply.

The statute refers to the uniform system of accounts, and specifies the operating revenues there "classified." The term used is "classified," and not "as shall be classified" or the like. The reference to "the uniform systems of accounts" is a reference to a specific regulation or document. The adoption, therefore, considered a classification, or list, which was already in existence. The reference to the uniform system is merely a shorthand method of listing items which are already listed in another source. The uniform systems which were in existence at the time of the 1945 amendment to the predecessor of § 12-264, and relevant to gas and electric companies, were those of January 1, 1941. The items listed therein, therefore, were those adopted by the legislature in § 12-264. Absent a clear grant of power to do so, we will not imply an intent on the part of the legislature to allow the commission to amend a statutory provision, here "operating revenues" as related to tax liability, at will. *South East Property Owners & Residents Assn.* v. *City Plan Commission,* 156 Conn. 587, 592, 244 A.2d 394; *State ex rel. Huntington* v. *McNulty,* 151 Conn. 447, 449, 199 A.2d 5; *Southern New England Telephone Co.* v. *Public Utilities Commission,* 144 Conn. 516, 523, 134 A.2d 351. "Operating revenues," as used in § 12-264, are thus limited to those items classified as such in the 1941 uniform system of accounts.

## II

Contributions in aid of construction include revenue received by the plaintiff as a reimbursement for the cost of installing equipment to which it retains title. A common example is the installation

of power lines to a remote area in order to service a single customer or several customers. In such a situation the customer or customers would reimburse the plaintiff for the cost of installation. The 1941 uniform system lists fifteen items as "operating revenues." §§ 600–615 as adopted by § 501. None of these includes contributions in aid of construction, although the regulations recognize such income in § 265. Thus, it seems evident that such contributions are not included in "operating revenue," and are not taxable as such. Likewise, these contributions are not included under income from merchandising, jobbing and contract work (§ 520); income from nonutility operations (§ 521); and revenues from the lease of physical property not devoted to utility operations (§ 522). "Receipts from the sale of residuals and other by-products" does not appear in the 1941 uniform system, but contributions in aid of construction, as stipulated, obviously do not fall thereunder. It is, therefore, clear that contributions in aid of construction are not taxable earnings under § 12-264.

Transmission receipts are included in § 739 of the uniform system. They include revenue received from sales of electric energy to other utilities. The reasonable interpretation of this section is that credits for energy transmission to other utilities are to be recorded, but not taxable. When such credits are liquidated, they become payments or receipts and enter a different category. § 739 (B). Thus, liquidated credits become revenue and can be taxed as "operating revenue," probably under § 605.

Transmission credits, as herein contemplated, are amounts owed to the plaintiff by another utility for the use of its transmission lines. Such credits are balanced with amounts owed by the plaintiff to

the other utility for the use of their transmission lines. The specific transaction here involved was a credit of approximately $225,000 in favor of the plaintiff in its dealings with the Connecticut Light and Power Company (C. L. & P.). By prior written agreement, the plaintiff's annual debt to C. L. & P., which was a result of its use of C. L. & P.'s transmission lines, was reduced by that amount. The credit was a result of C. L. & P.'s use of the plaintiff's transmission lines. In effect, the amount of the credit is a rental fee for the use of those lines. To say that the $225,000 was never received by the plaintiff, or that it never had a right to receive the money, would be to close our eyes to the actual fact. Clearly, the credit arrangement was to avoid having C. L. & P. pay the plaintiff for the use of its lines and then have the plaintiff turn around and pay C. L. & P. It is, in effect, a bookkeeping method to avoid crosspayments. That transmission credits are indeed revenues received is demonstrated by a hypothetical situation wherein the plaintiff has $200,000 worth of credits against C. L. & P. and where C. L. & P. has no credits against the plaintiff. At the end of the year the plaintiff would receive $200,000. Thus, the receipt of revenues is there; it is merely paid in the form of transmission line use, rather than in cash. Transmission credits, therefore, can be taxed as "operating revenues," probably under § 610, as rents received for the use by others of property devoted to electrical operation by the utility.

In the present situation, transmission receipts and credits for the sale of energy to other utilities and for the use of transmission lines were not considered taxable operating revenue by the commission during the years 1962–64. It was not until 1966

that they were so classified.[4] In order to assess the plaintiff on the increased basis which included transmission receipts and transmission credits, the defendant has invoked chapter 212a of the General Statutes, specifically § 12-268a. Thereunder, in respect to all utilities, "the commissioner at any time within three years after the filing by it [the utility] of a return based on the method of apportionment provided for in this chapter, may change such method." The question with which we are faced is whether a new interpretation of the revenue included in "operating revenue" is a change in "method of apportionment." Section 12-268a states that the method of apportionment applicable to this case is provided in § 12-265. Section 12-265 deals

[4] The parties stipulated that transmission receipts were classified as taxable income in the 1963 uniform system of accounts. We find the only mention of them in § 447 of the 1963 uniform system, which is entitled "Sales for Resale." This section is substantially the same as § 605 of the 1941 uniform system of accounts which is entitled "Sales to Other Electric Utilities." The direction for accounting in § 447 (1963) and § 605 (1941) is identical. The repetition, therefore, of this section in 1963 in no manner apprised the plaintiff of a change in interpretation by the defendant. The first notice of the new interpretation appearing in the record occurred when the defendant assessed the additional taxes on March 28, 1966.

Transmission credits are mentioned in § 456 of the 1963 uniform system of accounts, entitled "Other Electric Revenue." The parties appeared to stipulate that this section refers to transmission receipts. That section, in pertinent part reads: "(5) Revenues from transmission of electricity of others over transmission facilities of the utility." That item clearly refers to what the parties have termed "transmission credits" in their stipulation. Section 456 (5) (1963) is a new section, one not found in the 1941 uniform system. As such it was of no value relative to "operating revenue" in the tax base as specified in General Statutes § 12-264; it did not interpret any section of the 1941 uniform system. It, therefore, did not serve to notify the plaintiff of a change in interpretation of the 1941 uniform system such that transmission credits were to become taxable. Again, such notification, according to the record, did not occur until the additional assessment of March 28, 1966.

with the rate of tax on utilities and provides both the rate and the manner in which to apply that rate. Thus, it is apparent that a change in the taxable base, where proper under § 12-264, would not be a change in the method of apportionment. Absent specific authority to interpret retroactively, and because of the uncertainty, difficulties and hardship which could thus arise, we have never hesitated, on the ground of public policy, to curb the right of an administrative body to change its decision with retroactive effect. *Waterbury Savings Bank* v. *Danaher*, 128 Conn. 78, 92, 20 A.2d 455. There is no indication that the plaintiff is obtaining any inequitable advantage from applying the new rule on a purely prospective basis. Indeed, the tax commissioner has suggested no justification at all for applying the rule retroactively. Thus, a change in the tax base would be proper if the authority for that change could be found in § 12-264 and the pre-1945 uniform systems, but such a change, absent specific authority to the contrary, must be applied prospectively from the date of the new interpretation. Therefore, while from 1966 on, transmission credits and receipts became taxable income, they were not taxable in 1962, 1963 and 1964, and, therefore, the plaintiff could not be taxed on them. It is entitled to a refund for the amount paid in 1964, and it may not be assessed for the amounts received or credited in 1962 and 1963.

### III

We turn, finally, to the questions which we have been asked to answer. For the sake of clarity, we will specifically answer each.

(1) Chapter 212 of the General Statutes does not impose a tax on all receipts of the plaintiff.

(2) The plaintiff's gross earnings from operations are taxable under chapter 212.

(3) "Gross earnings from operations" are all of the items contemplated by §§ 600–615 of the 1941 uniform system of accounts prescribed for electrical utilities (operating revenues) as well as any other receipts which fall reasonably under any of the categories there listed; income from merchandising, jobbing and contract work as classified in the 1941 uniform system of accounts, and the other items which appear in § 12-264.

(4) and (5) We do not have sufficient information to determine whether "any other receipts of the plaintiff" are taxable. As stated in the answer to question 3, any receipts which reasonably fall under the categories listed in §§ 600–615 of the 1941 uniform system of accounts are taxable prospectively, from the time of their inclusion by the commissioner, as is income from merchandising, jobbing and contract work as classified in the 1941 uniform systems and also income from the other items listed in § 12-264.

(6) Amendments to the uniform system of accounts after 1945, have no effect on the tax base as stated in § 12-264, except to the extent that "income from non-utility operations and revenues from lease of physical property not devoted to utility operation, and receipts from the sale of residuals and other by-products obtained in connection with the production of gas, electricity or steam" are interpreted, prospectively, by such amendments.

(7) (a) Transmission receipts were not taxable in 1964, and thus the plaintiff is entitled to a refund for the taxes paid thereon.

(7) (b) Since reimbursement for damages to electric and gas properties has been conceded to be

not taxable, the plaintiff is entitled to a reimbursement of the taxes paid on such amounts.

No costs will be taxed in this court in favor of either party.

In this opinion RYAN and SHAPIRO, Js., concurred.

HOUSE, J. (dissenting in part). I disagree in part with the holding of the majority opinion and deem it of some significance that Public Act 604 of the 1961 session made a material change in the base of the tax on public utilities. When *Hartford Electric Light Co.* v. *McLaughlin,* 131 Conn. 1, 37 A.2d 361, was decided in 1944, the governing statute, § 1322 of the Revision of 1930, provided that "[e]ach company, the principal business of which is manufacturing, selling and distributing . . . electricity to be used for light, heat or motive power . . . shall pay an annual tax upon gross earnings from operations in this state." This court logically held that the legislature used the words "gross earnings" in the sense of the entire receipts from the company's operations. In the Revision of 1958, what had been § 1322 of the 1930 Revision became § 12-264 and, in the same words, imposed a tax on "gross earnings from operations in this state." Section 14 of Public Act No. 604 of the 1961 session of the General Assembly repealed § 12-264 and substituted what is now § 12-264. As thus amended and now in effect the base of the tax applicable to each company, "the principal business of which is manufacturing, selling or distributing . . . electricity," is no longer gross earnings from all operations in this state but instead is "upon gross earnings from such operations in this state." By the insertion of the word "such" before the word "operations," it seems clear that the tax base was by this portion of the statute limited in the first in-

stance to those encompassed by the preceding words "manufacturing, selling or distributing . . . electricity" but was then broadened by the inclusion of specifically stated sources of income, whether or not these enumerated sources in fact arose out of "manufacturing, selling or distributing" the electricity.

The public utility product involved in the present case being electricity, and the plaintiff being a company "the principal business of which is manufacturing, selling or distributing . . . electricity," the basic question for determination is whether contributions in aid of construction, transmission receipts and transmission credits are included within the statutory term "gross earnings from such operations," either because they directly fall within the broad category of "manufacturing, selling or distributing . . . electricity" or because they fall within one of the categories which the statute specifically prescribes shall be included within the term "gross income from such operations." This latter category is "income classified as operating revenues by the public utilities commission in the uniform systems of accounts prescribed by said commission . . . and all income classified in said uniform systems of accounts as income from merchandising, jobbing and contract work, income from nonutility operations and revenues from lease of physical property not devoted to utility operation, and receipts from the sale of residuals and other by-products obtained in connection with the production of . . . electricity."

I agree with the conclusion of the majority opinion that contributions in aid of construction are not taxable earnings under § 12-264. I incline to the belief that the transmission receipts and transmission credits are subject to tax as gross earnings from the portion of the plaintiff's principal business of

"selling or distributing . . . electricity." It is, how-ever, unnecessary to decide that question since the majority opinion, properly, I believe, concludes that transmission receipts and transmission credits are operating income within the definitions of the 1941 uniform system of accounts §§ 605, 610. My disa-greement with this portion of the majority opinion lies in the conclusion that "while from 1966 on, transmission credits and receipts became taxable income, they were not taxable in 1962, 1963 and 1964, and, therefore, the plaintiff could not be taxed on them. It is entitled to a refund for the amount paid in 1964, and it may not be assessed for the amounts received or credited in 1962 and 1963."

Since the majority opinion concludes that " '[o]p-erating revenues,' as used in § 12-264, are thus limited to those items classified as such in the 1941 uniform system of accounts," and that transmission receipts and transmission credits are operating in-come within the definitions of the governing 1941 uniform system of accounts, §§ 605, 610, it seems to me to follow that the transmission receipts and credits for 1962, 1963 and 1964, were all subject to the tax. I do not agree with the statement in the opinion that transmission receipts and credits were not classified as operating revenues until 1966. In fact, as the majority opinion concludes, they were so classified in 1941. What happened in 1966 was that the tax commissioner filed the deficiency assessment for the 1962, 1963 and 1964 tax years. The fact that the tax commissioner had not been enforcing this tax liability before 1966 does not, in my opinion, now bar its enforcement except to the extent that enforcement is barred by the statute of limitations. "An adminis-trative agency, charged with the protection of the public interest, is certainly not precluded from taking

appropriate action to that end because of mistaken action on its part in the past. . . . Nor can the principles of equitable estoppel be applied to deprive the public of the protection of a statute because of mistaken action or lack of action on the part of public officials." *National Labor Relations Board* v. *Baltimore Transit Co.,* 140 F.2d 51, 55 (4th Cir.), cert. denied, 321 U.S. 795, 64 S. Ct. 848, 88 L. Ed. 1084. As the court in *Commissioner of Internal Revenue* v. *Newport Industries, Inc.,* 121 F.2d 655, 657 (7th Cir.), expressed it: "Our thought in the matter is that the Commissioner has the power in a tax case to undo what he has done in order to eliminate error . . . . It is the general rule that within the period of limitations the Commissioner may reopen his own administrative rulings and findings." See also *Burnet* v. *Porter,* 283 U.S. 230, 51 S. Ct. 416, 75 L. Ed. 996; *Stanford University Book Store* v. *Helvering,* 83 F.2d 710 (D.C. Cir.); "Res Judicata in Administrative Law," 49 Yale L.J. 1250, 1265; note, 73 A.L.R.2d 939, 943–948 and Later Case Service, p. 61.

I find in the stipulation by the parties no support for a theory that the tax commissioner was "reinterpreting" the provisions of the 1941 uniform system of accounts. The relevant meanings of "interpret" are "1: to explain or tell the meaning of; translate into intelligible or familiar language or terms . . . 2: . . . construe." Webster, Third New International Dictionary. There is no indication that he, or the attorney general, or any other official, ever "interpreted" the regulations at all. The true situation is that prior to 1966 the existing statutory tax liability was not enforced by the tax commissioner. Subject to the operation of the statute of limitations, this laxity in enforcement of the tax law

does not operate to bar the collection of the taxes due but remaining unpaid. See *National Labor Relations Board* v. *Kobritz,* 193 F.2d 8, 13 (1st Cir.); 66 Harv. L. Rev. 348, 349.

In summary, it is my opinion that the plaintiff is subject to tax on its transmission receipts for the year 1964, and for transmission credits for the years 1962, 1963 and 1964. Accordingly, I agree with the majority opinion in the answers to reserved questions 1 and 7 (b), but would answer the remaining questions as follows:

(2) Gross earnings from its principal business of manufacturing, selling or distributing electricity, including in such gross earnings the specified items required by § 12-264 to be included.

(3) The tax is levied not on "gross earnings from operations" but on gross earnings from the plaintiff's manufacture, sale and distribution of electricity and "gross earnings from such operations" include all of the items specified in §§ 600–615 of the 1941 uniform system of accounts (operating revenues) as well as any other receipts which fall reasonably under any of the categories there listed; income from merchandising, jobbing and contract work as classified in the 1941 uniform system of accounts and the other items which appear in § 12-264.

(4) and (5) We do not have sufficient information to determine whether any other receipts of the plaintiff are taxable.

(6) Amendments to the uniform system of accounts after 1945 have no effect on the tax base as prescribed in § 12-264.

(7) (a) The plaintiff is not entitled to a refund of taxes paid on account of the inclusion in gross earnings of its transmission receipts in 1964.

In this opinion ALCORN, C. J., concurred.