COMMISSION ON HOSPITALS AND HEALTH CARE *v.*
KENNETH M. LAKOFF ET AL.
(13812)

PETERS, C. J., HEALEY, GLASS, HULL and SANTANIELLO, JS.

Argued January 9—decision released March 27, 1990

*David K. Jaffe,* with whom, on the brief, was *Hollace P. Brooks,* for the appellants (defendants).

*Henry A. Salton,* assistant attorney general, with whom were *Patricia Gerner,* assistant attorney general, and, on the brief, *Clarine Nardi Riddle,* attorney general, and *Richard J. Lynch,* assistant attorney general, for the appellee (plaintiff).

HULL, J. The dispositive issue in this appeal is whether the defendants, Kenneth M. Lakoff et al.,[1] were required by law to seek permission from the plaintiff, the commis-

---

[1] The defendants-appellants are the following: Kenneth M. Lakoff, M.D.; Kenneth M. Lakoff, M.D., d/b/a MRI of Cromwell Diagnostic, P.C.; Ken-

sion on hospitals and health care (commission), prior to providing magnetic resonance imaging (MRI) services[2] at the Cromwell Imaging Center located in the town of Cromwell. The defendants acquired a Technicare 0.6 Teslacon MRI system and began offering MRI services to the public on March 21, 1988. Upon investigation, the commission determined that the defendants' failure to secure the approval of the commission prior to acquiring the MRI system and instituting the MRI services was in violation of General Statutes §§ 19a-154[3] and 19a-155.[4] Consequently, the

neth M. Lakoff, M.D., d/b/a Cromwell Diagnostic, P.C.; Medscan, Inc.; Cromwell MRI Associates, L.P.; Cromwell Imaging Center Associates, L.P.; and John A. Bennett, M.D.

The Bucks County Bank and Trust Company was also named as a defendant; it did not, however, appear in the case or participate in this appeal.

[2] This system, also referred to as nuclear magnetic resonance, "permits imaging of soft tissues of the body by distinguishing between hydrogen atoms in different environments." Dorland's Illustrated Medical Dictionary (27th Ed. 1988) p. 1449.

[3] General Statutes § 19a-154 provides in pertinent part: "(a) . . . any health care facility or institution . . . which intends to introduce any additional function or service into its program of health care . . . shall prior to the proposed date . . . of institution of such function or service . . . submit to the commission a request for permission to undertake such function or service . . . . The commission shall make such review of the proposal as it deems necessary, including . . . in the case of the introduction of an additional function or service, ascertaining the availability of such service or function at other inpatient rehabilitation facilities, health care facilities or institutions or state health care facilities or institutions within the area to be served, the need for such service or function within such area and any other factors which the commission deems relevant to a determination of whether the facility or institution is justified in introducing such additional functions or services into its program . . . ."

General Statutes § 19a-145 defines "health care facility or institution" as follows: "any facility or institution engaged primarily in providing services for the prevention, diagnosis and treatment of human health conditions, including, but not limited to, home health care agencies, homemaker-home health aide agencies . . . clinical laboratory or central service facilities serving one or more health care facilities, practitioners or institutions; hospitals; personal care homes; nursing homes; nonprofit health centers; diagnostic and treatment facilities; rehabilitation facilities, and mental health facilities . . . ."

[4] General Statutes § 19a-155 provides in pertinent part: "(a) . . . any health care facility or institution . . . proposing . . . the acquisition of

commission brought an enforcement action under General Statutes § 19a-159,[5] seeking temporary and permanent injunctions barring the defendants from providing MRI services at the Cromwell Imaging Center until such time as the defendants had secured the necessary commission approval. A de novo hearing on the merits of the commission's action was held, after which the court rendered judgment, in part, for the commission and, accordingly, granted the requested relief. From this judgment the defendants appeal. We find no error.

The following facts are relevant to this appeal. The commission filed a three count complaint against the defendants. The first count alleged a violation of § 19a-154 in that the defendants, in operating a health care facility, had failed to seek permission from the commission prior to their introduction of an additional function or service into their program of health care.

major medical equipment having a cost exceeding four hundred thousand dollars, including the leasing of equipment or a facility, which expenditure was not included in a budget approved under section 19a-156, shall submit a request for approval of such expenditure to the commission, with such data, information and plans as the commission requires in advance of the proposed initiation date of such project . . . . The commission shall thereupon hold a public hearing with respect to such request . . . . The commission shall consider such request in relation to the community or regional need for such capital program or purchase of land, the possible effect on the operating costs of the health care facility or institution, and such other relevant factors as the commission deems necessary. . . .

"(b) Except as provided for in subsection (a) of this section, any person proposing a capital expenditure to acquire imaging equipment having a cost exceeding four hundred thousand dollars, including the lease of such equipment, which imaging equipment will not be owned by or located in a health care facility or institution, or state health care facility or institution, shall submit a request for approval of any such imaging equipment acquisition pursuant to the provisions of subsection (a) of this section."

[5] General Statutes § 19a-159 provides: "The superior court on application of the commission or the attorney general, may enforce, by appropriate decree or process, any provision of this chapter [chapter 368c entitled 'Commission on Hospitals and Health Care'] or any act or any order of the commission rendered in pursuance of any statutory provision."

The second and third counts alleged that the defendants had failed to seek permission from the commission prior to spending in excess of $400,000 for major medical equipment, in violation of § 19a-155 (a), and for imaging equipment, in violation of § 19a-155 (b).

In considering the issues presented by the commission's action, the court made the following factual findings: "The defendants are Kenneth M. Lakoff, M.D. and a series of interlocking corporations which together own and operate a radiological center and an MRI center in the same quarters (but in different suites) of a building in Cromwell. Separate corporations have acquired the equipment in question . . . from the leasing and operating corporations. Separate corporations operate the radiology service and the MRI service. For the purposes of this action, the court will find that the defendants are jointly controlled by Dr. Lakoff and Medscan, Inc."

The court further found that the "MRI Service is performed for the defendants' MRI operating company, MRI of Cromwell Diagnostic, P.C., by an independent group of radiologists. The service is strictly a diagnostic function. This company receives virtually no business on its own but only from referring physicians. Hospitals make no referrals to it, nor does the company perform any imaging services for hospitals."

With these facts as its backdrop, the court rendered judgment in favor of the commission on the first count. The court's ruling was based on its conclusion that the defendants operate a "health care facility" under § 19a-145 and are thus subject to the approval provision of § 19a-154. With respect to the second and third counts, the court found in favor of the defendants, concluding that the defendants had not exceeded the statutory limit of $400,000 in the acquisition of the MRI system. Given its ruling on the first count, the court

granted the requested injunctions, ordering that the defendants cease operating and providing MRI services at the Cromwell Imaging Center until such time as they received the necessary commission approval. On appeal the defendants claim that the court erred in determining that the defendants were subject to the approval provision of § 19a-154 because: (1) the defendants are not a "health care facility" as defined by § 19a-145; and (2) the defendants are not introducing "an additional function or service" as that term is used in § 19a-154 (a).

I

We turn first to the defendants' claim that the court erred in its conclusion that the defendants operate a "health care facility" as defined by our statutes.

General Statutes § 19a-145 provides in pertinent part: " 'health care facility or institution' means any facility or institution engaged primarily in providing services for the prevention, diagnosis *and* treatment of human health conditions, including, but not limited to, home health care agencies, homemaker-home health aide agencies . . . clinical laboratory or *central service facilities* serving one or more health care facilities, practitioners or institutions . . . . " (Emphasis added.) The court determined that "the legislature intended to include in this definition institutions which perform all of the health care functions of diagnosis, treatment and prevention, but in addition thereto, certain others which the statute specifically designates." Because the defendants perform only a diagnostic function, the court found that the defendants do not fall within the parameters of the statute's general definition. The court determined, however, that the additional facilities designated by the statute are exceptions to the general definition of a health care facility and are not required to perform all of the services of prevention,

diagnosis, and treatment. The court then concluded that "the MRI Center operated by the defendants falls within the statutory definition of a central service facility serving practitioners," and thus held that the defendants are a "health care facility or institution" under § 19a-145 and as such are subject to the provisions of § 19a-154.

The defendants argue that the trial court's conclusion is erroneous for three reasons: (a) the defendants do not provide all the services necessary to be categorized as a "health care facility or institution"; (b) MRI of Cromwell Diagnostic, P.C., is not a "central service facility"; and (c) to categorize the defendants as a "health care facility" violates the defendants' constitutional right to equal protection of the laws. We are not persuaded by the defendants' arguments.

A

The definition of "health care facility or institution" contained in § 19a-145 is comprised of two sections, a general definition and a list of specific facilities included thereunder. The trial court concluded that the defendants are a "health care facility," not under the general definition, but as a "central service facility," a specifically designated exception to the general definition. While we agree with the trial court that the defendants are a "central service facility," discussed in part B, infra, we disagree with the court's reading of the general definition of "health care facility or institution" in § 19a-145.[6]

---

[6] The plaintiff reserved this issue as an alternate ground upon which the judgment may be affirmed pursuant to Practice Book § 4013. Given our disposition of this issue, we could decide the case on this basis and go no further. We have determined, however, in light of the significance of the issues in this case, that we should also consider whether the court correctly concluded that the Imaging Center is a "central service facility."

The general definition of a health care facility as "any facility or institution engaged primarily in providing services for the prevention, diagnosis and treatment of human health conditions"; General Statutes § 19a-145; clearly applies to the specific operations listed after this definition. In leading from the general definition to the specific types of service organizations listed thereafter, the statute states: *"including,* but not limited to . . . central service facilities . . . ." (Emphasis added.) General Statutes § 19a-145. To hold, as did the trial court, that the specific facilities listed in the statute are *exceptions* to the general definition would be to ignore the plain meaning of the words employed and the inexorable logic of the sentence structure of the statute. Therefore, the question to be answered in this appeal is the meaning of the general definition. The commission argues that the word "and" in the phrase "prevention, diagnosis and treatment" should be construed as "or" so that an entity performing only one of the three functions would meet the definition of a "health care facility or institution." We agree.

We will review § 19a-145 in the light of well established principles that require us to ascertain and give effect to the apparent intent of the legislature. *Rhodes* v. *Hartford,* 201 Conn. 89, 93, 513 A.2d 124 (1986); *Norwich* v. *Silverberg,* 200 Conn. 367, 370–71, 511 A.2d 336 (1986); *State* v. *Kozlowski,* 199 Conn. 667, 673, 509 A.2d 20 (1986); 2A J. Sutherland, Statutory Construction (4th Ed. Sands 1984) § 45.05. An examination of the overall structure of § 19a-145 reveals that many of the itemized facilities do not provide all three of the services in question. Thus, the proper interpretation to be given the word "and" is not clear and unambiguous. "When we are confronted . . . with ambiguity in a statute, we seek to ascertain the actual intent by looking to the words of the statute itself; *State* v. *Kozlowski,* supra, 673; *Dukes* v. *Durante,* 192 Conn.

207, 214, 471 A.2d 1368 (1984); the legislative history and circumstances surrounding the enactment of the statute; *State* v. *Kozlowski,* supra, 673; *DeFonce Construction Corporation* v. *State,* 198 Conn. 185, 187, 501 A.2d 745 (1985); *State* v. *Parmalee,* 197 Conn. 158, 161, 496 A.2d 186 (1985); *State* v. *Delafose,* [185 Conn. 517, 522, 441 A.2d 158 (1981)]; and the purpose the statute is to serve. *Peck* v. *Jacquemin,* 196 Conn. 53, 64, 491 A.2d 1043 (1985); *Verrastro* v. *Sivertsen,* 188 Conn. 213, 221, 448 A.2d 1344 (1982); *Robinson* v. *Unemployment Security Board of Review,* 181 Conn. 1, 8, 434 A.2d 293 (1980)." *Rhodes* v. *Hartford,* supra, 93. " 'It is an elementary rule of construction that statutes should be considered as a whole, with a view toward reconciling their separate parts in order to render a reasonable overall interpretation; the application, moreover, of common sense to the statutory language is not to be excluded.' " *Dukes* v. *Durante,* supra, 214, quoting *La Providenza* v. *State Employees' Retirement Commission,* 178 Conn. 23, 29, 420 A.2d 905 (1979).

"To effectuate the intention of the legislature . . . 'and' may be construed to mean 'or.' 3 C.J.S. 1068. What the legislative intent expressed by the phrase [in question] as used in the statute is cannot be determined by resort to a definition of the word 'and' per se but must be deduced from a consideration of the several pertinent statutory provisions indicative of the policy of the state in conferring upon [the commission, the responsibility at issue]. . . . The 'reason and purpose of the legislation as shown by its provisions may well be more significant than technical definitions in determining the meaning of the particular words employed.' *Hartford Electric Light Co.* v. *McLaughlin,* 131 Conn. 1, 5, 37 A.2d 361 [1944]; *Snyder* v. *Reshenk,* 131 Conn. 252, 257, 38 A.2d 803 [1944]; *West Hartford* v. *Thomas D. Faulkner Co.,* 126 Conn. 206, 211, 10 A.2d 592 [1940]." *Bania* v. *New Hartford,* 138 Conn. 172, 176–77, 83 A.2d 165 (1951).

Examples of elements of § 19a-145 that conflict with the trial court's conclusion concerning the meaning of "and" abound. The statute specifically includes in its definition of "health care facility or institution," "diagnostic and treatment facilities," an obvious contradiction to the court's conclusion that the use of "and" is conjunctive. Likewise, "home health care agencies," "homemaker-home health aide agencies," and "nursing home facilities," three types of operations also included within the statute, do not provide all three of these services. See General Statutes § 19a-490 (d) (definition of home health care agency); General Statutes § 19a-490 (e) (definition of homemaker-home health aide agency); General Statutes § 19a-521 (definition of nursing home facility). Only the construction of "and" as disjunctive makes the inclusion of these four specific services logically consistent with the general definition of "health care facility or institution." "In construing a statute, we will assume the legislature intended to accomplish a reasonable and rational result." *Peck* v. *Jacquemin,* supra, 66. "Insofar as it is possible, the entire enactment is to be harmonized, each part made operative." *State* v. *Grant,* 176 Conn. 17, 20, 404 A.2d 873 (1978).

The legislative intent expressed by the phrase in question can also be found in the fact that the legislature recently amended § 19a-145 to read in pertinent part: "prevention, diagnosis *or* treatment." (Emphasis added.) Public Acts 1989, No. 89-72, § 4. During the House of Representatives debate on the proposed amendment, Representative Doreen M. Del Bianco stated that the purpose of the amendment was one of clarification. 32 H.R. Proc., Pt. 9, 1989 Sess., pp. 3000–3002. "[A] clarifying act, which 'in effect construes and clarifies a prior statute must be accepted as the legislative declaration of the meaning of the origi-

nal act.' " *State* v. *Blasko,* 202 Conn. 541, 557, 522 A.2d 753 (1987), quoting *Tax Commissioner* v. *Estate of Bissell,* 173 Conn. 232, 246, 377 A.2d 305 (1977).

Finally, the restrictive interpretation of § 19a-145 adopted by the trial court, and urged by the defendants, would undermine the overall purpose of the legislature in creating the commission. The broad scope of the legislative scheme is evident in the provision of General Statutes § 19a-150 defining the general duties of the commission on hospitals and health care: "The commission, in consultation with the state bureau of health planning and development, shall carry out a continuing state-wide health care facility utilization review, including a study of existing health care delivery systems; recommend improvements in health care procedures to the health care facilities and institutions; recommend to the commissioner legislation in the area of health care programs; and report annually to the governor and the general assembly, on January first, its findings, recommendations and proposals for improving efficiency, lowering health care costs, coordinating use of facilities and services and expanding the availability of health care throughout the state."

The commission regulates rates and budgets for health care facilities. General Statutes §§ 19a-151, 19a-152, 19a-156, 19a-166. It also regulates the capital expenditures and acquisition of major medical equipment for health care facilities in an effort to increase the quality, accessibility, and cost-effectiveness of health care delivery in Connecticut. General Statutes § 19a-155. Clearly, in order to meet its panoramic responsibilities, the commission must be able to regulate the provision of health care services in facilities that fulfill any or all of the three broad statutory functions of "prevention, diagnosis and treatment."

To adopt the trial court's reading of the general definition would enable providers of health care services to avoid regulation by the commission by the mere juggling of corporate entities or careful allocation of services to different operations. Such "Balkanization" of inherently unitary health services can only chip away at the commission's authority in this vitally important area of service to Connecticut's citizens. We will not advance such an undertaking. In order to achieve a reasonable and rational result that is harmonious with the broad socially ameliorative purposes of the statute, we construe the word "and" in § 19a-145 to mean "or." Therefore, since the defendants provide a diagnostic service, they operate a "health care facility or institution."

### B

The defendants next claim that the court erroneously determined that the defendants are a "central service facility." The main thrust of the defendants' argument is somewhat difficult to grasp. They claim that the court answered a question that was not before it. The question before the court, the defendants argue, was not whether Cromwell Imaging Center or Cromwell Diagnostic, P.C., were health care facilities, but rather whether MRI of Cromwell Diagnostic, P.C., was a health care facility, because the commission sought injunctions only against MRI of Cromwell Diagnostic, P.C. This argument is seriously in error. In its prayer for relief, the commission sought temporary and permanent injunctions "barring the defendants from operating and providing MRI services at the 'Cromwell Imaging Center' until such time as the defendants . . . received the necessary approval . . . ." The gravamen of the commission's complaint embraces the concept that, despite the labyrinthian corporate and management structure involved, all of the defendants together control the provision of services at the Crom-

well Imaging Center. Paragraph one of the first count alleges that *all* of the defendants operate and control the center. Paragraph 12 then alleges that "[t]hese related entities . . . constitute a health care facility . . . as defined in Conn. Gen. Stat. § 19a-145."

It is significant that the defendants at trial did not directly challenge the court's conclusion that the defendants are jointly controlled by Lakoff and Medscan, Inc. The defendants also did not specifically challenge the court's conclusion that all of the defendants together, operating the Cromwell Imaging Center, are encompassed by the definition of a "health care facility" in § 19a-145, because they operate a "central service facilit[y] serving one or more . . . practitioners . . . ." The defendants' argument thus fails if the interlocking entities constitute a "central service facility."

The defendants rely principally on the unreported Superior Court decision of *Commission on Hospitals & Health Care* v. *Neuro-Diagnostics, P.C.,* Court of Common Pleas, Hartford County, Docket No. 143812 (December 20, 1977), to argue that the court erroneously determined that, in operating a "central service facility," the defendants are subject to the approval provision of General Statutes § 19a-154. In *Neuro-Diagnostics, P.C.,* a group of neurologists had formed a professional corporation to provide all manner of neurological services. The court denied the commission's request for an injunction, under the statutory predecessors of General Statutes §§ 19a-145 and 19a-155, against the defendants' proposed purchase and operation of a C.T. Scanner. In the opinion, the court stated that "the purpose and intention of the legislature was to regulate hospitals and public institutions and not the private practice of medicine." We note first that this opinion of the trial court, although entitled to serious consideration, is not binding authority in this court.

More cogently, *Neuro-Diagnostics, P.C.,* concerned the private practice of medicine, and has remote relevance to the instant case where the private practice of medicine is not involved. In the present case, the defendants' operation resembles a hospital type of diagnostic service in that patients are referred to the center for particular tests rather than to specific physicians.

We are thus left with the simple question of whether the court correctly concluded that the Imaging Center is a "central service facility." No litany of canons of statutory construction is required for this task. General Statutes § 1-1 (a) provides: "In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language . . . ." "When the words of a statute are plain and unambiguous, we need look no further for interpretive guidance because we assume that the words themselves express the intention of the legislature. *Johnson* v. *Manson,* 196 Conn. 309, 316, 493 A.2d 846 (1985), cert. denied, 474 U.S. 1063, 106 S. Ct. 813, 88 L. Ed. 2d 787 (1986); *Mazur* v. *Blum,* 184 Conn. 116, 118–19, 441 A.2d 65 (1981)." *Rhodes* v. *Hartford,* supra, 93. As the trial court stated, an imaging center "provides a diagnostic *service* to doctors or other facilities in its surrounding area, or . . . from 'all over.' The geographical location of a center such as this must be central to the surrounding referring physicians." (Emphasis in original.) We agree that the Cromwell Imaging Center is a "central service facility."

## C

The defendants next claim that to subject them to the approval provision of General Statutes § 19a-154 violates their constitutional rights to equal protection under the federal and state constitutions. The basis of the defendants' claim is that a diagnostic facility should be treated no differently than are private doctors offices

as in *Neuro-Diagnostics, P.C.* Since this claim was not raised below, we do not consider it. Practice Book § 4185. We note, in passing, however, that the defendants state the following: "If the court were to: (a) hold that MRI of Cromwell Diagnostic, P.C., is within the reach of § 19a-154, but (b) acknowledge that the group in *Neuro-Diagnostics, P.C.*, is not within the statute (which was the determination of the *Neuro-Diagnostics, P.C.* court . . . ), then a classification [that is unrelated to the purposes of the legislation] would be placed between the two groups." The defendants' equal protection argument is, therefore, based on a scenario that has not occurred. We have not acknowledged that the group in *Neuro-Diagnostics, P.C.*, is not within the statute. That case is obviously not before us.

## II

The defendants' second claim is that the court erred in implicitly holding that they were introducing an "additional function or service" as that term is used in § 19a-154 (a). This claim focuses on the statutory language that provides for the regulation of those health care facilities "which intend[s] to introduce any additional function or service into its program of care." General Statutes § 19a-154 (a). The basis of the defendants' argument is that MRI of Cromwell Diagnostic, P.C., is a new MRI service just beginning operation and, as such, it seeks not to add to an existing service but to start an MRI service where nothing previously existed. We find this claim to be without merit. It overlooks completely the trial court's central finding concerning the functional unity of all the pieces of the corporate jigsaw puzzle that operated the Cromwell Imaging Center. The defendants did not seek articulation of the court's reasoning in reaching this conclusion. Given the state of the record, we cannot say that

the court's conclusion that the Imaging Center, made up in varying degrees of all of the defendants, was an addition of a new service, was clearly erroneous.

There is no error.

In this opinion the other justices concurred.