# IN THE SUPREME COURT OF IOWA

No. 07–1698

Filed July 17, 2009

**AMERICAN EYECARE,**

Appellant,

vs.

**DEPARTMENT OF HUMAN SERVICES,**

Appellee.

_____

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Lee County, Michael Schilling, Judge.

Provider of eyecare services challenges the Department of Human Services' finding it upcoded eye examinations. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED.**

David A. Hirsch, Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Diane M. Stahle, Special Assistant Attorney General, for appellee.

**STREIT, Justice**.

American Eyecare billed Medicaid for comprehensive eye examinations it performed on its patients. The Department of Human Services (DHS) determined the exams should have been billed as intermediate exams because the services rendered did not meet the definition of "comprehensive ophthalmological services." DHS demanded American Eyecare repay the overpayment. Because DHS's interpretation of "comprehensive ophthalmological services" is erroneous and because its determination that neither of the sample cases met the definition of "comprehensive ophthalmological services" is not supported by substantial evidence, we vacate the court of appeals and reverse the district court.

## I. Facts and Prior Proceedings.

American Eyecare is a provider of optometric goods and services. From 2000 to 2002, American Eyecare submitted separate billings to DHS for comprehensive ophthalmological services provided to Medicaid-covered patients. Comprehensive examinations warrant a higher rate of reimbursement under the DHS payment schedule than intermediate examinations. The fee schedule for physicians is based on the definitions of medical and surgical procedures set forth in the American Medical Association Physicians' Current Procedural Terminology (CPT). *See* Iowa Admin. Code r. 441—79.1(7) (2009).

In 2005, Iowa Medicaid's fiscal agent performed an audit of American Eyecare's records, pursuant to Iowa Code section 249A.7 (2005) and Iowa Administrative Code rule 441—79.4(3). The fiscal agent concluded American Eyecare had charged for a higher level of services, or upcoded eye examinations; although it submitted billings for comprehensive examinations, American Eyecare's services only qualified

as intermediate examinations because there was no documentation supporting initiation of a diagnostic and treatment program. Based on a small sample of American Eyecare's patients (two patients), DHS determined American Eyecare had routinely upcoded such examinations. Accordingly, DHS sought reimbursement with respect to all of the services for 964 patients, assuming American Eyecare had made the same error in each case. *See* Iowa Admin. Code r. 441—79.4(3)(*e*) (permitting "the use of random sampling and extrapolation"). The services provided in the audited cases included, among other things, a general evaluation of the complete visual system and refraction. DHS sent American Eyecare an Official Notice of Denial of Claims, demanding American Eyecare repay the overpayment ($26,095.52) within thirty days. The notice concluded "the documentation in your records did not support the level of these codes."

American Eyecare appealed the denial of claims, arguing its optometrists did perform comprehensive examinations. On April 29, 2005, a contested case hearing was held before an administrative law judge. At the hearing, a DHS representative stated that DHS interprets "comprehensive ophthalmological services" as requiring all treatments listed under the definition of "initiation of a diagnostic and treatment program" be performed in order to be reimbursed at the higher rate. The administrative law judge, who affirmed the agency's finding of upcoding from intermediate to comprehensive examinations, concluded "[t]he record did not show that any of these procedures were initiated in the [sample] cases."

American Eyecare filed a petition for judicial review. American Eyecare asserted the exams in question were comprehensive and involved "the initiation of diagnostic and treatment program[s]." The

district court affirmed, giving deference to the agency's interpretation of the CPT and concluding substantial evidence supported the agency's decision. American Eyecare appealed, and we transferred the case to the court of appeals. The court of appeals affirmed.

## II. Scope of Review.

We review a final agency action for correction of errors at law. *Houck v. Iowa Bd. of Pharmacy Exam'rs*, 752 N.W.2d 14, 16 (Iowa 2008). "We review the district court decision by applying the standards of the [Iowa] Administrative Procedure Act to the agency action to determine if our conclusions are the same reached by the district court." *Locate.Plus.Com, Inc. v. Iowa Dep't of Transp.*, 650 N.W.2d 609, 612 (Iowa 2002). We are bound by the agency's findings so long as they are supported by substantial evidence. *Univ. of Iowa Hosps. & Clinics v. Waters*, 674 N.W.2d 92, 95 (Iowa 2004).

> "*Substantial evidence*" means the quantity and quality of evidence that would be deemed sufficient by a neutral, detached, and reasonable person, to establish the fact at issue when the consequences resulting from the establishment of that fact are understood to be serious and of great importance.

Iowa Code § 17A.19(10)(*f*)(1).[1]

The nature of our review of DHS's interpretation depends on whether the legislature has clearly vested the agency with the discretion to interpret the rule at issue. *See Id.* § 17A.19(10)(*c*), (*l*). "When an agency has not clearly been vested with the discretion to interpret the pertinent statute, the court gives no deference to the agency's interpretation of the statute." *Iowa Ass'n of Sch. Bds. v. Iowa Dep't of Educ.*, 739 N.W.2d 303, 306 (Iowa 2007). In that situation, we will reverse where the interpretation is based on "an erroneous

---

[1]All references to the Iowa Administrative Procedure Act are to the 2009 code.

interpretation" of the law. Iowa Code § 17A.19(10)(*c*). However, if the legislature has clearly vested the agency with the authority to interpret its rules and regulations, then we grant the agency's interpretation "appropriate deference," and we will only reverse when the interpretation is "irrational, illogical, or wholly unjustifiable." *Id.* § 17A.19(11)(*c*), (10)(*l*). We disavow the concept of limited deference for agency interpretations within the agency's expertise as set forth in *Madrid Home for the Aging v. Iowa Department of Human Services*, 557 N.W.2d 507, 510–11 (Iowa 1996). *See Iowa Assoc. of Sch. Bds.*, 739 N.W.2d at 306–07. That concept is no longer viable under the current version of the Iowa Administrative Procedure Act. *See* Arthur E. Bonfield, *Amendments to Iowa Administrative Procedure Act, Report on Selected Provisions to Iowa State Bar Association and Iowa State Government* 61–63 (1998).

Iowa Code section 249A.4 empowers the director of DHS to adopt rules regarding reimbursement for medical and health services for Medicaid patients. DHS argues because the legislature has given them broad or sole authority to run the Medicaid program, it has the power to interpret its rules and regulations. However, the statute does not clearly give DHS the authority to interpret its rules and regulations. *See State v. Pub. Employment Relations Bd.*, 744 N.W.2d 357, 360 (Iowa 2008) (finding the power to enact, implement, and administer rules and regulations is not the same as the power to interpret them); *Mosher v. Dep't of Inspections & Appeals*, 671 N.W.2d 501, 509 (Iowa 2003) (finding "general regulatory authority . . . does not qualify as a legislative delegation of discretion" to the agency). As the legislature has not clearly vested DHS with the authority to interpret its rules and regulations, we will not defer to DHS's interpretation. Therefore, our review of DHS's

interpretation of its rules and regulations is for correction of errors at law.  Iowa Code § 17A.19(10)(*c*).

### III.  Merits.

Iowa's Medicaid program is governed by Iowa Code chapter 249A. Section 249A.4(9) empowers the director of DHS to "[a]dopt rules pursuant to chapter 17A in determining the method and level of reimbursement for all medical and health services."  Under Iowa Administrative Code rule 441—79.1(7), physicians are reimbursed according to a "fee schedule . . . based on the definitions of medical and surgical procedures given in the most recent edition of Physician's Current Procedural Terminology (CPT)."  The 2001 CPT provides the following definitions of intermediate and comprehensive ophthalmological services:

> *Intermediate ophthalmological services* describes an evaluation of a new or existing condition complicated with a new diagnosis or management problem not necessarily relating to the primary diagnosis, including history, general medical observation, external ocular and adnexal examination and other diagnostic procedures as indicated; may include the use of mydriasis for ophthalmoscopy.
>
> . . .
>
> *Comprehensive ophthalmological services* describes a general evaluation of the complete visual system.  The comprehensive services constitute a single service entity but need not be performed at one session.  The service includes history, general medical observation, external and ophthalmoscopic examinations, gross visual fields and basic sensorimotor examination.  It often includes, as indicated: biomicroscopy, examination with cycloplegia or mydriasis and tonometry.  *It always includes initiation of diagnostic and treatment programs.*

(Emphasis added).

The point of contention here is the phrase "it always includes initiation of diagnostic and treatment programs," which distinguishes

comprehensive services from intermediate services. According to the CPT, the "initiation of diagnostic and treatment program includes the prescription of medication, and arranging for special ophthalmological diagnostic or treatment services, consultations, laboratory procedures and radiological services." The CPT lists the determination of refractive state as an example of special ophthalmological services.

In DHS's denial of claims notice, it concluded "there was no documentation to support initiation of a diagnostic and treatment program which is always included in a comprehensive exam." At the administrative hearing, a DHS representative argued that all services and procedures listed in the definition of "initiation of diagnostic and treatment programs" must be performed in order for the exam to qualify as comprehensive. Under that interpretation, a comprehensive exam must include (1) the prescription of medication, (2) arranging special ophthalmological diagnostic or treatment services, (3) consultations, (4) laboratory procedures, and (5) radiological services. American Eyecare asserts DHS's interpretation of the CPT, requiring all services listed to be performed, is illogical, as the services listed in the definition are just examples of the types of services that would be included in a comprehensive examination.

The administrative law judge determined American Eyecare did not initiate a diagnostic and treatment program in the two sample cases, as "[t]he record did not show that any of [the] procedures [listed in the CPT definition of initiation of diagnostic and treatment program] were initiated in the [sample] cases." On judicial review, the district court gave deference to the agency's interpretation and affirmed. The district court erred in granting the agency deference. *See Iowa Ass'n of Sch. Bds.,* 739 N.W.2d at 306; Iowa Code § 17A.19(10)(*c*).

DHS's interpretation offered in the administrative hearing is contrary to the rules of statutory construction.[2] In interpreting a statute, rule, or regulation, we "look to the plain language . . . to establish . . . intent." *TLC Home Health Care, L.L.C. v. Iowa Dep't of Human Servs.*, 638 N.W.2d 708, 713 (Iowa 2002). The CPT defines "initiation of diagnostic and treatment program" as follows: "initiation of diagnostic and treatment program includes the prescription of medication, and arranging for special ophthalmological diagnostic or treatment services, consultations, laboratory procedures and radiological services." The question is whether all of the services following the word "includes" are required in order to qualify as "initiation of diagnostic and treatment program."

When a statutory definition uses the word "includes" as opposed to "means," as the case is here, the term is "more susceptible to extension of meaning by construction than where the definition declares what a term 'means.' " 2A Norman J. Singer & J.D. Shambie Singer, *Sutherland Statutory Construction* § 47:7, at 305 (7th ed. 2007). The word "includes" can be used as a term of enlargement or as a word of limitation or restriction. *TLC Home Health Care*, 638 N.W.2d at 713. Generally, "the verb 'includes' imports a general class, some of whose particular instances are those specified in the definition." *Helvering v. Morgan's, Inc.*, 293 U.S. 121, 126 n.1, 55 S. Ct. 60, 62 n.1, 79 L. Ed. 232, 235 n.1 (1934). As federal and state courts have recognized, " '[i]ncludes' has various shades of meaning, and its interpretation 'depends upon the

---

[2]Although neither the administrative law judge nor district court ruled directly on the statutory interpretation that would mandate all services and treatments listed under "initiation of diagnostic and treatment program" be performed, the State's brief certainly relies upon such interpretation in its contention that American Eyecare failed to prove it performed services necessary to be compensated for a comprehensive eye exam. However, the State also takes the alternate position that American Eyecare failed to perform any of the services listed.

context' in which the term is used." *Liverpool v. Baltimore Diamond Exch., Inc.*, 799 A.2d 1264, 1274 (Md. 2002) (quoting *Housing Auth. v. Bennett*, 754 A.2d 367, 375–76 (Md. 2000)). "[W]here a general term is followed by the word 'including,' which is itself followed by specific terms, the intent may be one of limitation." *State Pub. Defender v. Iowa Dist. Ct.*, 633 N.W.2d 280, 283 (Iowa 2001).

The debate over the word "includes" is whether the terms that follow "includes" are simply illustrative of the types of services or whether the terms are an exhaustive (and restricted) list of permissible items, not whether all of the terms following "includes" are required to meet the definition of the term. *See, e.g., Fed. Land Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95, 100, 62 S. Ct. 1, 4, 86 L. Ed. 65, 70 (1941) (under certain circumstances "the term 'including' is not one of all-embracing definition, but connotes simply an illustrative application of the general principle"); *TLC Home Health Care*, 638 N.W.2d at 713 (determining the phrase "home health services include the following services and items" to restrict or limit the class of covered services).

Here, a DHS representative argued in the administrative hearing that all services listed after the word "includes" must be provided in order to meet the definition of the word preceding "includes." The court of appeals, in affirming the district court and the administrative law decision, concluded "the words 'includes' and the conjunctive use of, 'and,' indicate multiple types of services listed must be performed to qualify as the initiation of a diagnostic and treatment program and thus must be performed to be billed as  a comprehensive exam." Although "[o]rdinarily, the word 'and' is used as a conjunctive, requiring satisfaction of both listed conditions," *Casteel v. Iowa Dep't of Transp.*, 395 N.W.2d 896, 898 (Iowa 1986), the term "and" is often used in

definitions and courts generally do not interpret all of the terms following "including" to be required if the word "and" connects them. *See Tribbitt v. State*, 943 A.2d 1260, 1271 (Md. 2008) (determining Maryland Code Criminal Law section 3-602(a)(4)(ii), " 'sexual abuse' includes [1] incest; [2] rape; [3] sexual offense in any degree; [4] sodomy and; [5] unnatural or perverted sexual practices," does not limit "sexual abuse" to the crimes enumerated). Further, we have, on occasion, interpreted the use of the word "and" as disjunctive rather than conjunctive. *See Ness v. H.M. Iltis Lumber Co.*, 256 Iowa 588, 593, 128 N.W.2d 237, 239–40 (1964) (interpreting "direct and proximate cause" to mean the same thing as "direct or proximate cause").

In *Commission on Hospitals & Health Care v. Lakoff*, 572 A.2d 316 (Conn. 1990), the Connecticut Supreme Court addressed a similar issue, whether an MRI center met the statutory definition of health care facility, as "any facility or institution engaged primarily in providing services for the prevention, diagnosis *and* treatment of human health conditions." *Lakoff*, 572 A.2d at 319 (emphasis added). The MRI center only provided diagnostic services and did not offer treatment services. *Id.* Determining the facility in question met the statutory definition of a "health care facility," the court construed the word "and" to mean "or" "[i]n order to achieve a reasonable and rational result that is harmonious with the broad socially ameliorative purposes of the statute . . . ." *Id.* at 321.

A similar interpretation is necessary here. American Eyecare asserts only very few examinations would meet the statutory definition of comprehensive examination if the optometrist was required to prescribe medication, arrange for special ophthalmological diagnostic or treatment services, consultations, laboratory procedures, and radiological services. It argues that, because examinations where all treatments are performed

are highly uncommon, DHS's interpretation is "erroneous, illogical, and unsupported."

If DHS had intended to require all listed services be performed in order to qualify as "initiation of diagnostic and treatment program," it could have done so expressly. It could have used the phrase "must include all of the following" or the word "requires" instead of "includes." *See, e.g.,* 42 C.F.R. § 440.70(b) (2009) ("Home health services include the following services and items. Those listed in paragraphs (b)(1), (2), and (3) of this section are required services; those in paragraph (b)(4) of this section are optional.").

We determine the interpretation of "initiation of diagnostic and treatment program," requiring all services listed to be performed in order to meet the definition, is erroneous. *See* Iowa Code § 17A.19(10)(*c*) (court will reverse agency's action where it was "[b]ased upon an erroneous interpretation of a provision of law whose interpretation has not clearly been vested by a provision of law in the discretion of the agency").

Further, the agency's conclusion that "[t]he record did not show that any of [the] procedures [listed in the CPT definition of initiation of diagnostic and treatment program] were initiated in the [sample] cases" is not supported by substantial evidence. American Eyecare performed refraction in both sample cases, in addition to a general evaluation of the complete visual system. The CPT lists the determination of refractive state as an example of special ophthalmological services, which is one of the treatments that satisfies the definition of "initiation of diagnostic and treatment program." As American Eyecare initiated a diagnostic and treatment program and performed a general evaluation of the complete visual system in both sample cases, both of these cases meet the definition of "comprehensive ophthalmological services" listed in the CPT.

The agency's determination is not supported by substantial evidence.  We vacate the court of appeals and reverse the district court.

**IV. Conclusion.**

The agency's interpretation of "initiation of diagnostic and treatment program" is erroneous.  Further, the agency's determination that neither of the sample cases met the definition of comprehensive ophthalmological services is not supported by substantial evidence.  We vacate the court of appeals, reverse the district court, and remand for entry of judgment in conformance with this opinion.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED.**