# IN THE COURT OF APPEALS OF IOWA

No. 13-0866
Filed October 1, 2014


**EXCEPTIONAL PERSONS, INC., NEW CHOICES, INC., HANDICAPPED DEVELOPMENT CENTER, LIFEWORKS COMMUNITY SERVICES, CANDEO, VOCATIONAL DEVELOPMENT CENTER, INC., NISHNA PRODUCTIONS, INC., and KRYSILIS, INC.,**
Plaintiffs-Appellants,

**vs.**

**IOWA DEPARTMENT OF HUMAN SERVICES,**
Defendant-Appellee.
_____

Appeal from the Iowa District Court for Polk County, Lawrence P. McLellan, Judge.


Providers of home and community based services appeal from the district court's ruling on judicial review that upheld the Iowa Department of Human Services' (DHS) adoption of Iowa Administrative Code rule 441-79.16(10) (Dec. 2009). DHS cross-appeals the district court's reversal of the DHS director's entry of summary judgment on the basis the rule was applied appropriately. **AFFIRMED ON APPEAL; REVERSED ON CROSS-APPEAL.**


Patrick B. White of White Law Office, P.C., Des Moines, for appellants.

Thomas J. Miller, Attorney General, and Timothy L. Vavricek, Assistant Attorney General, for appellee.


Heard by Potterfield, P.J., and Tabor and Mullins, JJ.

**POTTERFIELD, P.J.**

Providers of home and community based services appeal from the district court's ruling on judicial review that upheld the Iowa Department of Human Services' (DHS) adoption of Iowa Administrative Code rule 441-79.16(10) (Dec. 2009) by alternative rulemaking procedures. The rule imposed a 2.5 percent cut in the Medicaid payments made to home and community based services providers as part of DHS's plan to implement the governor's mid-fiscal year ten percent across-the-board budget cut. The providers assert DHS was not authorized to use the rulemaking procedures of Iowa Code section 17A.4(3) (2009) to adopt such an administrative rule, even in the context of the Governor's executive order that required across-the-board spending cuts in the middle of the fiscal year. The providers also challenge a long-time procedure for "one-way settlement," which requires providers to remit any excess payments made by DHS as determined by the agency's end-of-fiscal-year reconciliations. With respect to the issues raised in the providers' appeal, we come to the same conclusions as did the district court. Rule 441.79.16(1) was validly adopted under alternative rulemaking procedures and we find no error in DHS's interpretation of its retrospective adjustment rule.

DHS cross-appeals the district court's reversal of the DHS director's summary judgment in its favor on grounds the agency properly applied rule 441-79.16(10) when processing the providers' year-end Medicaid cost reports. We reverse the district court on the cross-appeal because both parties agree the question presented is one of law, which is amenable to summary judgment.

**I. Background Facts and Proceedings.**

The appellants are eight providers of home and community based services (HCBS) enrolled in the Iowa Medicaid program. HCBS are in-home or community-based services provided to a Medicaid beneficiary to help maintain the beneficiary in their own home. The services are designed to avoid the higher costs to the Medicaid program that might result from institutionalization. When provided to an eligible beneficiary by an enrolled provider, HCBS are reimbursed under the Iowa Medicaid program rates that have been established by DHS as set forth in its administrative rules. *See* Iowa Admin. Code ch. 441-79.

In essence, an HCBS provider receives payments throughout a fiscal year[1] based on a prospective rate, which historically has been calculated by considering the provider's actual costs during the prior year and adding an inflation factor. At the end of the fiscal year, the provider submits a cost report to DHS detailing the actual costs the provider incurred. DHS's accounting firm, Myers & Stauffer, reviews the cost report and performs a year-end reconciliation or "retrospective adjustment."[2] If the HCBS provider received payments based on the prospective rate that exceeded the provider's actual costs, the provider is informed it must repay the overpayment of Medicaid funds.[3]

---

[1] Iowa's fiscal year runs from July 1 to June 30.

[2] Prior to the adoption of Iowa Administrative Code rule 79.16(10) (December 2009), DHS performed this year-end reconciliation allowing each HCBS provider to keep 102.5% of its prior year's actual costs.

[3] With respect to HCBS providers, DHS employs a "one-way settlement," that is, if the provider's prospective rate payments it received during the fiscal year exceeded its actual costs (plus allowed inflation factor), the provider is required to pay the state back for the amounts in excess. However, if the provider's actual costs for the year exceeded payments received based on the prospective rate, the provider does not receive additional Medicaid funds from the state.

On October 8, 2009, then-Governor Chet Culver issued Executive Order 19. Citing the country's severe recession, a series of natural disasters affecting the state, and the approximate $415 million reduction of projected general fund revenues, Executive Order 19 mandated a ten percent across-the-board cut in state government spending. The mid-fiscal year order directed all state agencies and departments to implement the reduction immediately.[4] Neither the HCBS nor the Medicaid program were exempt from the ten-percent reduction ordered by Executive Order 19.

DHS explored various means of achieving the required reductions and received feedback from interested parties. DHS determined that HCBS Medicaid reimbursement rates would be reduced by 2.5 percent. Other provider groups (e.g., pharmacies) were subject to greater reductions. Some providers (e.g., those whose reimbursement rates were exclusively set by federal law) were not affected by Executive Order 19.

DHS issued a Notice of Intended Action for the proposed changes. In November 2009, HCBS providers were notified by DHS Informational Letters 864 (issued November 16) and 869 (issued November 30) of the proposed 2.5% rate adjustment. HCBS providers also received a copy of a draft rule effectuating the rate change, which stated it was to be effective as of December 1, 2009.

In December 2009, DHS initiated the rulemaking process to implement the cuts required by Executive Order 19. DHS published the draft rule under the regular notice provisions and under alternate "emergency" rulemaking provisions

---

[4] The ten-percent reduction was to be implemented for fiscal year 2010 (July 1, 2009, to June 30, 2010).

of chapter 17A. The rule change notices were filed with the Administrative Rules Review Committee (ARRC) with an effective date of December 1, 2009. The proposed rule changes were posted on the administrative rules pages of the DHS Office of Policy Analysis website (now found at http://dhs.iowa.gov/ime/providers/rulesandpolicies) and were included in the ARC (the required register of the administrative rules coordinator, *see* Iowa Code § 17A.5(1)). The proposed rule changes were reviewed by the Council on Human Services, were published in the Iowa Administrative Bulletin on December 2, 2009, and were reviewed by the ARRC at its meeting held on December 8, 2009. The ARRC specifically reviewed the emergency provisions of the noticed rules. The rules and the proposed rate changes were approved by the ARRC.

In April 2010, the rate reductions implemented by the rule (found in Iowa Code chapters 78, 79, and 80) were approved by the Iowa General Assembly with the passage of H.F. 2526. Section 33(13) of H.F. 2526 authorized DHS to "adopt emergency rules to implement this section." Section 34 of H.F. 2526 is entitled EMERGENCY RULES and provides, in part:

> (1) If specifically authorized by a provision of this division of this Act, the department of human services . . . may adopt administrative rules under section 17A.4, subsection 3, and section 17A.5, subsection 2, paragraph "b", to implement the provisions and the rules shall become effective immediately upon filing or on a later effective date specified in the rules, unless the effective date is delayed by the administrative rules review committee. Any rules adopted in accordance with this section shall not take effect before the rules are reviewed by the administrative rules review committee.

H.F. 2526 was signed by the governor on April 29, 2010.

Iowa Administrative Code rule 441-79.16(10) (Dec. 2009) provides:

> Notwithstanding any provision of subrule 79.1(2),[5] payment for covered services rendered by home- and community-based waiver providers shall be reduced by 2.5 percent from the rates in affect [sic] November 30, 2009.
>   (a) Rates based on a submitted financial and statistical report shall be consistent with the methodology described in subparagraph 79.1(15)(d)(1) except that the inflation adjustment applied to actual, historical costs and the prior period base cost shall be reduced by 2.5%.
>   (b) The retrospective adjustment of prospective rates shall be made based on revenues exceeding 100 percent of adjusted actual costs.  Adjusted actual costs shall not exceed the upper limits as specified in subrule 79.1(2).

HCBS providers submitted cost reports at the end of fiscal year 2010.  DHS performed its retrospective adjustment.  Each of the appellants received a notice that it had been overpaid for Medicaid HCBS and repayment was sought.  These eight HCBS providers (hereinafter providers) filed administrative appeals raising numerous issues.

An administrative law judge (ALJ) consolidated the administrative appeals.  As pertinent here,[6] the providers challenged the validity of the adoption of rule 441-79.16(10).  They also contended rule 441-79.16 was improperly applied to prospective rates.  They argued further that DHS's one-way settlement practice was contrary to reimbursement rules.

DHS filed a motion for summary judgment on February 8, 2012.  On May 4, 2012, the ALJ issued a proposed decision in which she "determined that the questions presented are legal questions for which there are no material facts in dispute."  The ALJ found rule 441-79.16(10) was validly adopted and granted

---

[5] That subparagraph is entitled, "Basis of reimbursement of specific provider categories," and includes an "upper limit."
[6] Numerous claims were made and addressed, but only these issues are before us.

DHS's motion for summary judgment in its entirety. After a remand from the DHS director, the ALJ made the further finding that rule 441-79.16(10) was properly applied. The director adopted the ALJ's decision and granted summary judgment to DHS. In response to the providers' request for rehearing, the director wrote:

> The appellant argued that [rule 441-79.16(10)] is an invalid rule. However, the appellant, not the department, is the one who has to shoulder a heavy burden to invalidate an administrative rule: *Anderson v. Iowa Dep't of Human Servs.*, 368 N. W.2d 104, 108 (1985). In this case, the appellant has not been able to produce any evidence to demonstrate the invalidity of [the rule] on their federal and state law theories.
> With respect to the one-way settlement issue, the appellant believes that [rule 441-79.1(b) should be read to require a two-way settlement in [rule 441-79.1(15)(f)] . . . .
> The department reimburses the appellant in the sense the department pays the appellant for providing HCBS services. However, this does not mean if revenues ultimately do not exceed adjusted costs by the requisite threshold, the department must "reimburse" funds to the provider in the sense that the department would remit funds. All that [rule 441-79.1(b)] requires by its terms is that the department adopt a retrospective, cost-related reimbursement methodology. The one-way settlement rule is a retrospective, cost-related reimbursement methodology.

The providers sought judicial review in the district court. The district court affirmed the director in part, concluding rule 441-79.16(10) was validly promulgated under emergency rulemaking authority and upholding the one-way settlement practice. The providers appeal from these rulings.

However, the district court also reversed in part, concluding the record made at the agency was not sufficient to determine as a matter of law that rule 441-79.16(10) was properly applied. DHS's cross-appeal challenges this conclusion.

**II. Scope and Standard of Review.**

The Iowa Administrative Procedure Act, chapter 17A (2011),[7] "governs the standards under which we review the district court's decisions on judicial review of agency action." *Auen v. Alcoholic Beverages Div.*, 679 N.W.2d 586, 589 (2004). Under the Act, we may only interfere with the agency "decision if it is erroneous under one of the grounds enumerated in the statute, and a party's substantial rights have been prejudiced." *Meyer v. IBP*, *Inc.*, 710 N.W.2d 213, 218 (Iowa 2006). The district court acts in an appellate capacity to correct errors of law on the part of the agency. *Grundmeyer v. Weyerhaeuser Co.*, 649 N.W.2d 744, 748 (Iowa 2002). In reviewing the district court's decision, we apply the standards of chapter 17A to determine whether our conclusions are the same as those reached by the district court. *Mycogen Seeds v. Sands*, 686 N.W.2d 457, 464 (Iowa 2004). If our conclusions are the same, we affirm; otherwise, we reverse. *Id.*

**III**. **HCBS Providers' Appeal.**

"Medicaid is a cooperative federal-state program through which the federal government provides financial assistance to states so that they may furnish medical care to needy individuals." *TLC Home Health Care*, *L.L.C. v. Iowa Dep't of Human Servs.*, 638 N.W.2d 708, 711 (Iowa 2002) (citation and internal quotation marks omitted). States electing to participate in Medicaid must develop state Medicaid plans consistent with the federal Medicaid statute, regulations,

---

[7] The relevant code for purposes of judicial review is the code in effect when the petition for judicial review was filed. However, the code and regulations in effect at the time of the challenged agency actions—2009 or 2010 Supp.—governed the rulemaking and challenged agency actions.

and administrative rules. *Id.* at 712. As a condition of receipt of federal Medicaid funds, a state plan must comply with federal laws and regulations. *Madrid Home for the Aging v. Iowa Dep't of Human Servs.*, 557 N.W.2d 507, 511 (Iowa 1996). Upon approval of the state plan, the federal government will reimburse the state for a percentage of the program's expenses, including administrative costs and other program-related expenses. *Id.*

The Medicaid program in Iowa is governed by Iowa Code chapter 249A. *Am. Eyecare v. Dep't of Human Servs.*, 770 N.W.2d 832, 836 (Iowa 2009). Pursuant to Iowa Code section 249A.4 (2009), the director of human services is "responsible for the effective and impartial administration" of the medical assistance provided in the chapter. The director is to "[d]etermine the greatest amount, duration, and scope of assistance which may be provided, and the broadest range of eligible individuals to whom assistance may effectively be provided, under this chapter within the limitations of available funds." Iowa Code § 249A.4(1).

The director is also required to:

> Adopt rules pursuant to chapter 17A in determining the method and level of reimbursement for all medical and health services referred to in section 249A.2, subsection 1 or 7, after considering all of the following:
> a. The promotion of efficient and cost-effective delivery of medical and health services.
> b. Compliance with federal law and regulations.
> c. The level of state and federal appropriations for medical assistance.
> d. Reimbursement at a level as near as possible to actual costs and charges after priority is given to the considerations in paragraphs "a", "b", and "c".

*Id.* § 249A.4(9).

The procedures for adopting rules are set out in Iowa Code section 17A.4 and generally require published notice thirty-five days in advance of intended action and the opportunity for input by interested persons. *Id.* § 17A.4(1). However, "[w]hen an agency for good cause finds that notice and public participation would be unnecessary, impracticable, or contrary to the public interest, the provisions of subsection 1 shall be inapplicable." *Id.* § 17A.4(3). The alternative rulemaking procedure found in section 17A.4(3) requires:

> The agency shall incorporate in each rule issued in reliance upon this provision either *the finding and a brief statement of the reasons for the finding*, or a statement that the rule is within a very narrowly tailored category of rules whose issuance has previously been exempted from subsection 1 by a special rule relying on this provision and including such a finding and statement of reasons for the entire category. If the administrative rules review committee by a two-thirds vote, the governor, or the attorney general files with the administrative code editor an objection to the adoption of any rule pursuant to this subsection, that rule shall cease to be effective one hundred eighty days after the date the objection was filed. A copy of the objection, properly dated, shall be forwarded to the agency at the time of filing the objection. In any action contesting a rule adopted pursuant to this subsection, the burden of proof shall be on the agency to show that the procedures of subsection 1 were impracticable, unnecessary, or contrary to the public interest and that, if a category of rules was involved, the category was very narrowly tailored.

(Emphasis added.)

*A. Validity of Iowa Administrative Code rule 441-79.16(10).* The providers challenge Iowa Administrative Code rule 441-79.16(10), contending it was not validly adopted. Noting the agency has the burden, the providers contend DHS has not proved it was entitled to employ the rulemaking procedures of section 17A.4(3). The appellants argue any "emergency" scenario requires that DHS

demonstrate it had "no choice but to cut these rates so quickly." But this reads too much into section 17A.4(3).

It is true H.F. 2526, enacted following the DHS's use of alternate rulemaking to comply with the Governor's executive order, referred to and authorized "emergency rules." However, the provision allows DHS to "adopt administrative rules under section 17A.4, subsection 3, and section 17A.5, subsection 2, paragraph 'b' [relating to effective date]." Section 17A.4(3) makes no mention of an "emergency" and thus we need not determine what that term might mean.

Section 17A.4(3) provides that if certain findings are made by the agency, the rulemaking procedures of subsection (1) are "inapplicable." Specifically, "When an agency for good cause finds that notice and public participation would be unnecessary, impracticable, or contrary to the public interest, the provisions of subsection 1 shall be inapplicable." Iowa Code §17A.4(3). If an agency makes such a finding, "the finding and a brief statement of the reasons for the finding" must be incorporated "in each rule issued in reliance upon this provision." *Id.*

As recorded at ARC 8344B, amendments to chapters 78, 79, and 81 of the Iowa Code were being made "[p]ursuant to the authority of Iowa Code section 249A.4" and were to "reduce the reimbursement for most Medicaid services to achieve the savings required by Executive Order 19, which mandated a 10 percent across-the-board cut in expenditures." Included were these statements:

> The Department finds that notice and public participation are impracticable and contrary to the public interest. The Department is statutorily and constitutionally required to reduce spending obligations to the level of constitutionally authorized appropriations. Deeper cuts would be required if the Department were to delay

> taking action to allow for notice and public participation. Therefore, these amendments are filed pursuant to Iowa Code section 17A.4(3).
>
> The Department also finds, pursuant to Iowa Code section 17A.5(2) "b," that avoidance of deficit spending confers a public benefit and that the immediate efficacy of this amendment is necessary because of the presently existing constitutional peril to the public welfare caused by spending obligations which exceed available revenues. Therefore, the normal effective date of these amendments is waived.

The providers do not challenge these findings by affidavit or otherwise. Rather, the providers point out the "destruction the rule has caused" and "how painful the cuts were." They also argue the rate reduction "saved the state very little money." Such statements of purported consequences resulting from the adopted rules do not negate the agency's enunciated, undisputed findings that "notice and public participation are impracticable and contrary to the public interest" under Iowa Code section 17A.4(3). *See* Iowa R. Civ. P. 1.981(3) (providing summary "judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law"). Under our caselaw, the party moving for summary judgment has the burden of showing facts that entitle it to summary judgment. *Peoples Trust & Sav. Bank v. Sec. Sav. Bank*, 815 N.W.2d 744, 755 (Iowa 2012); (citing cases). "Once that burden is met, the nonmoving party must present competent evidence to generate a genuine issue of material fact." *Id.* DHS submitted an affidavit in support of summary judgment outlining the circumstances and context of the

alternative rulemaking and the public interest in an expedited rule. The providers did not counter with any affidavit or challenge the content of DHS's affidavit.

The providers argue that pursuant to Iowa Code section 17A.5(2)(b), DHS was also required to show an immediate effective date was "necessary because of imminent peril to the public health, safety or welfare." This is but one of three alternative findings allowed under section 17A.5(2)(b). Section 17A.5(2)(b) authorizes an immediate effective date "if the agency finds: (1) That the statute so provides; (2) That the rule confers a benefit or removes a restriction on the public . . .; *or* (3) That the effective date is necessary because of imminent peril to the public health, safety, or welfare . . . ." (Emphasis added.) DHS made the finding noted in subparagraph (2) that "avoidance of deficit spending confers a public benefit." *See* Iowa Code § 17A.5(2)(b)(2).

We note neither section 17A.4(3) or .5(2)(b) requires specific "findings" processes. *Cf. Madrid Home for the Aging*, 557 N.W.2d at 512-13 (discussing the Medicaid program requirement that a state make "findings" that rates are "reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities" and noting that "[e]ven though the 'findings' requirement is mandatory, the Boren amendment does not require a formal, detailed, or technical findings process").

In its statement of undisputed facts in support of its motion for summary judgment—supported by the affidavit of Jeff Marston the Account Manager of the Iowa Medicaid Enterprise's Provider Cost Audit and Rate Setting Contractor— DHS stated that the United States entered a severe recession in 2008; the recession and a series of natural disasters adversely affected the state of Iowa's

budget; the Revenue Estimating Conference reduced the state's official projection of state general fund revenues for fiscal year 2010 by $415 million on October 7, 2009; the projected reduction in revenue prompted Governor Culver to issue Executive Order 19, which ordered the department to immediately cut its budget by ten percent; DHS balanced innumerable factors in implementing the ten-percent cut and received recommendations from persons within and without state government; and consideration of these factors resulted in DHS's decision to cut Medicaid rates of HCBS providers by 2.5%. The providers presented no affidavit disputing the circumstances recited. Nor do they challenge that DHS was required to immediately comply with the Governor's Executive Order.

"An agency rule is generally presumed valid unless the party challenging the rule proves a rational agency could not conclude the rule was within its delegated authority." *Meredith Outdoor Adver.*, *Inc. v. Iowa Dep't. of Transp.*, 648 N.W.2d 109, 117 (Iowa 2002) (citations and internal quotation marks omitted). Rules may also be invalid if the rule exceeds the scope of authority granted to the agency by the legislature. *Id.* This summary judgment record presents no material issue of disputed fact in relation to the validity of the adoption of rule 441-79.16(10) pursuant to Iowa Code sections 17A.4(3) and 17A.5(2)(b).

*B. One-way settlement.* The providers also maintain that the administrative rules governing provider reimbursement should result in the provider receiving additional monies if their year-end cost report indicates the prospective payments have not covered their actual costs. The providers rely

upon Iowa Administrative Code rules 441-79.1(1)(b) and .1(15)(f)(1), which state

in relevant part:

> 79.1(1) *Types of reimbursement*.
> . . . .
> (b) *Retrospective cost-related*. Providers are reimbursed on the basis of a per diem rate calculated retrospectively for each participating provider based on reasonable and proper costs of operation with suitable retroactive adjustments based on submission of financial and statistical reports by the provider. The retroactive adjustment represents the difference between the amount received by the provider during the year for covered services and the amount determined in accordance with an accepted method of cost apportionment (generally the Medicare principles of apportionment) to be the actual cost of service rendered medical assistance recipients.
> . . . .
> 79.1(15) *HCBS retrospectively limited prospective rates*. This methodology applies to reimbursement for HCBS supported community living; HCBS family and community support services; HCBS supported employment enhanced job search-activities; HCBS interim medical monitoring and treatment when provided by an HCBS-certified supported community agency; HCBS respite when provided by nonfacility providers, camps, home care agencies, or providers of residential-based supported community living; and HCBS group respite provided by home health agencies.
> . . . .
> (f) *Retrospective adjustments*.
> (1) Retrospective adjustments shall be made based on reconciliation of provider's reasonable and proper actual service costs with the revenues received for those services as reported on Form 470-3449; Supplemental Schedule, accompanying Form SS-1703-0, Financial and Statistical Report for Purchase of Service.
> (2) Revenues exceeding adjusted actual costs by more than 2.5 percent shall be remitted to the department. Payment will be due upon notice of the new rates and retrospective adjustment.
> (3) Providers who do not reimburse revenues exceeding 2.5 percent of actual costs 30 days after notice is given by the department will have the revenues over 2.5 percent of the actual costs deducted from future payments.

The providers observe that other types of service providers are allowed "two-way

adjustments."

DHS argues rule 441-79.1(15)(f)(2) provides the support for the long-standing practice of one-way settlement because it specifically provides for payment to the department ("Revenues exceeding adjusted actual costs by more than 2.5 percent shall be remitted to the department."), while no similar provision exists with regard to payment to providers if revenues do not meet adjusted actual costs.

"As the legislature has not clearly vested DHS with the authority to interpret its rules and regulations, we will not defer to DHS's interpretation. Therefore, our review of DHS's interpretation of its rules and regulations is for correction of errors at law. Iowa Code § 17A.19(10)(c)." *Am. Eyecare*, 770 N.W.2d at 836.

Iowa Code section 249A.4(9) authorizes the director to:

Adopt rules pursuant to chapter 17A in determining the method and level of reimbursement for all medical and health services referred to in section 249A.2, . . . , after considering *all* of the following:
(a) The promotion of efficient and cost-effective delivery of medical and health services.
(b) Compliance with federal law and regulations.
(c) The level of state and federal appropriations for medical assistance.
(d) Reimbursement at *a level as near as possible to actual costs and charges after priority is given to* the considerations in paragraphs "a", "b", and "c".

(Emphasis added.)

Based on the language of the statute, we agree with the district court that "the statute that authorizes the director to promulgate reimbursement rules does not require reimbursement for 100% of the providers' costs." Rather, reimbursement is to be at a level "as near as possible to actual costs and

charges" but only after giving priority to the listed factors, including the "promotion of efficient and cost-effective delivery of medical and health services" and the "level of state . . . appropriations." Iowa Code § 249A.4(9). Actual costs are not promised to providers by the rules adopted. *See* Iowa Admin. Code r. 441-79.1(1)(b) ("Providers are reimbursed *on the basis of a per diem rate calculated retrospectively* for each participating provider based on *reasonable and proper costs of operation with suitable retroactive adjustments* based on submission of financial and statistical reports by the provider." (emphasis added)). Under the rule, a provider is informed that it will be reimbursed based on retrospectively calculated rate based on "reasonable and proper costs"—not actual costs of operation. *See Madrid Home for the Aging*, 557 N.W.2d at 512 ("Currently, a state's Medicaid plan must provide reimbursement to providers at rates which the state finds 'are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities . . . .'" (citing 42 U.S.C. § 1396a(a)(13)(A)).). Moreover, while the providers are obviously not happy with the practice, the providers acknowledge the one-way settlement is a practice of long standing. Nothing in the statutory provision or regulations requires the result the providers urge. We find no error of law in the agency's interpretation.

**IV. DHS's Cross-appeal.**

In its cross-appeal, DHS contends the district court erred in holding there is a genuine factual dispute as to whether the department correctly applied rule 441-79.16(10). DHS asserts that before the agency and in the district court the providers maintained DHS impermissibly applied rule 441-79.16(10) to

prospective rates by cutting the upper limits on reimbursement or "caps" in rule 441-79.1(2) without legal authority.[8]  DHS argues the contention lacks merit because in cutting the caps it "followed the plain and unambiguous language" of 441-79.16(10).  DHS maintains that whether or not the rule 441-79.16(10) supports cutting the caps found in rule 441-79.1 "is a purely legal question" subject to a determination as a matter of law.

In response, the providers argue the department did not properly apply section 79.16(10), and in their argument, make

> two points—one specific point, and one broader point.  The first, specific point is that the Department, when implementing [rule 441-79.16(10)], improperly cut the rate caps applicable to Petitioners.  In other words, [rule 441-79.16(10)] did not allow for a cut in the rate caps, but the Department cut the caps anyway.
>      The second, broader point is that, by applying the combination of the following factors, the Department robbed Appellants of the guarantee that providers receive 100% of their Medicaid costs: 1) [rule 441-79.16(10)'s] cut in the prospective rate and cut in the year-end reconciliation factor; 2) the Department's cut in the rate caps; and, 3) the Department's one-way settlement method.
>      . . . Practically speaking, on the Department's cross-appeal, this Court need only decide the specific issue of whether [rule 441-79.16(10)] allowed the Department to cut the rate caps.

The providers acknowledge that if this court finds the rule allows a cut in the rate caps, we should reverse the district court and find DHS is entitled to judgment as a matter of law.

The question is whether the language of rule 441-79.16(10) allows a cut in "upper limit" or rate caps found in rule 441-79.1.  This is a legal question amenable to summary judgment.  "As the legislature has not clearly vested DHS

---

[8] DHS asserts the "critical premise" in [the providers'] argument is the assertion that, "[b]y its terms, Section 79.16(10) did not take any action on these caps."

with the authority to interpret its rules and regulations, we will not defer to DHS's interpretation. Therefore our review is for corrections of errors at law." *Am. Eyecare*, 770 N.W.2d at 836.

In interpreting a rule or regulation, we look to the plain language to establish the agency's intent. *Id.* at 837. The pertinent language of rule 441-79.16(10) is: "Notwithstanding any provision of subrule 79.1(2), payment for covered services rendered by home- and community-based waiver providers shall be reduced by 2.5 percent from the rates in [e]ffect November 30, 2009."

DHS contends the phrase "notwithstanding any provision of subrule 79.1(2)" specifically contemplates cutting the caps in rule 441-79.1(2). The providers argue that the rule was "attempting to cut the prospective rates by reducing the inflation factor" and "[i]f the Department had truly intended to make a rule to cut the rate cap, it knew how to do so in the appropriate manner," pointing to subsequent changes to the rule changing individual specific "upper limits" stated in rule 441-79.1(2).

The term "notwithstanding" means "in spite of" or "nevertheless." American Heritage Dictionary 951 (4th ed.). Here, the term is used to avoid some limitation.

"Any" means "one, some, every, or all without specification." American Heritage Dictionary, 64.

Subrule 79.1(2) is encaptioned, "Basis of reimbursement of specific provider categories." What follows are three columns with the headings "Provider category," "Basis of reimbursement," and "Upper limit." HCBS providers are further subcategorized, for example:

| Provider Category | Basis of reimbursement | Upper limit |
|---|---|---|
| 18. Supported community living | Retrospectively limited prospective rates. See 79.1(15) | $34.98 per hour, $78.88 per day not to exceed the maximum daily IFR/MR per diem |

Under rule 441-79.16(10), in spite of "*any* provision" in rule 441-79.1(2), payment for services rendered by HCBS providers "shall be reduced by 2.5 percent from the rates." Thus, "any provision" is capable of encompassing the "upper limits" enumerated in rule 441-79.1(2). The fact that DHS individually adjusted enumerated rates the next year does not alter this reading of the rule. We conclude the director did not err in determining rule 441-79.16(10) allowed a cut in the "upper limit" or rate cap. The district court erred in reversing summary judgment for DHS on this basis.

We affirm on the providers appeal. We reverse on DHS's cross-appeal. The director properly granted summary judgment to the agency.

**AFFIRMED ON APPEAL; REVERSED ON CROSS-APPEAL.**